1                    IN THE UNITED STATES DISTRICT COURT
                        FOR THE DISTRICT OF MARYLAND
2                            NORTHERN DIVISION

3    UNITED STATES OF AMERICA,            )
                                          )
4            Plaintiff,                    )
        vs.                                )
5                                          ) CRIMINAL NO.:
     KAMAR O. BECKLES,                     ) 1:18-cr-00335-GJH-3
6                                          )
             Defendant.                    )
7    _____)

8
                                          Baltimore, Maryland
9                                         January 27, 2022
                                          10:00 a.m.
10
                        TRANSCRIPT OF PROCEEDINGS
11                         **SENTENCING HEARING**
                   BEFORE THE HONORABLE GEORGE J. HAZEL
12                           Courtroom 3D

13
     For the Plaintiff:
14
         Paul A. Riley, Esquire
15       Christopher Rigali, Esquire
           Assistant U.S. Attorneys
16

17   For the Defendant:

18       John M. McKenna, Esquire

19
     Also Present:  Paige Cameron, Probation
20                  Detective Carl Walder, Baltimore County Police

21       Proceedings recorded by mechanical stenography, transcript
     produced by computer.
22

23   _____

24                    Patricia G. Mitchell, RMR, CRR
                      Federal Official Court Reporter
25                    101 W. Lombard Street, 4th Floor
                         Baltimore, Maryland 21201

```
 1                     P R O C E E D I N G S

 2        (1:29 p.m.)

 3             THE COURT:  You may be seated.  Can I have the

 4   Government call the case.

 5             MR. RILEY:  Good afternoon, Your Honor.  Would you

 6   like me to be seated for this portion?  I know during our last

 7   hearing, you wanted us seated for argument.

 8             THE COURT:  The reason I did that last time was, as I

 9   had indicated before, in my courtroom in Greenbelt, there was a

10   plexiglass right there so if you stay seated, you're still

11   behind the plexiglass.  There's not a plexiglass there so it

12   doesn't matter.

13             MR. RILEY:  Okay, understood, Your Honor.  Calling

14   the case of the United States of America versus Kamar Beckles,

15   Criminal No. GJH-18-335.  Assistant U.S. Attorneys Paul Riley

16   and Chris Rigali on behalf of the Government.  With us at

17   counsel table is Detective Carl Walder from Baltimore County

18   Police Department.  I'd like to note that Special Agent Summer

19   Baugh and Colleen O'Connor are present as well.

20             We're here today, Your Honor, for the defendant's

21   sentencing.

22             THE COURT:  All right.  Good afternoon to each of

23   you.

24             MR. MCKENNA:  Good afternoon, Your Honor.  For the

25   record, John McKenna on behalf of Mr. Beckles who's seated
```

1    beside me.

2            THE COURT:  Good afternoon to each of you.  I guess

3    the other sort of COVID-related issue, I think I'm going to try

4    to keep my mask on.  It does get uncomfortable if speaking a

5    lot which I do at sentencing, so there's a possibility I change

6    my mind.  As long as madam court reporter is indicating that

7    she can hear us with our mask on, we'll keep our mask on.  If

8    she informs us or if I'm having a hard time hearing you, we

9    might make adjustments.  The numbers continue to rise -- I

10   guess now they're coming back down, but they're still at an

11   elevated level so we'll be a little extra cautious today.

12           On August 30, 2021, the defendant appeared before the

13   Court for trial and at the conclusion of that proceeding was

14   found guilty on Counts 1 through 4.  Count 5, as I recall, was

15   dismissed.  We'll do that again for the record at the

16   conclusion of this hearing.  But upon a finding of guilt, the

17   Court ordered preparation of a presentencing report and

18   sentencing was scheduled for today.

19           I've received and reviewed the presentencing report,

20   a sentencing memorandum which was filed by the Government with

21   a number of exhibits, primarily being victim impact statements.

22   Then a sentencing memorandum filed by the defense which also

23   had an exhibit attached.

24           Is there anything else that I should have received

25   and haven't mentioned?

```
1            MR. RILEY:  Not from the Government, Your Honor.

2            MR. MCKENNA:  Not from the defense, Your Honor.

3            THE COURT:  The other thing I want to do quickly

4  while I'm thinking about it.  I don't know, because of the age

5  of the case, I don't know if we ever did a due process order.

6  We might not have because the trial even was some time ago.

7  Maybe we did it before trial.  There's certainly no harm in me

8  doing it again just in case I did not.

9            I don't have it in front of me, but I can do the gist

10 of it by memory.  Let me advise the government that you have an

11 obligation under Brady v. Maryland and its progeny to disclose

12 to the defense as soon as possible any material in your

13 possession, custody or control that could potentially be

14 exculpatory to the defense.  If you were to fail to do that,

15 there could be any number of consequences to the government

16 from exclusion of evidence, dismissal of charges, or even under

17 certain extreme circumstances, professional consequences for

18 the attorneys involved.

19           Does the Government understand their Brady

20 obligations?

21           MR. RILEY:  Yes, Your Honor, the Government

22 understands its obligations and has abided by those

23 obligations.

24           THE COURT:  So that's done for the record, just in

25 case we had not done that.
```

1        Mr. McKenna, can you confirm that you and your client

2   have read and discussed the presentencing report?

3        MR. MCKENNA:  Yes, Your Honor.

4        THE COURT:  All right.  I understand there were some

5   objections.  It seems like at least as to two of them, the

6   Government has conceded.  For instance, I think because they

7   wanted to be consistent -- and I appreciate this -- with the

8   ruling I already made as to Mr. Fields, they are not seeking

9   the sophisticated means enhancement.  And they have decided --

10  I tend to agree -- that it simply does not fit the enhancement

11  for receiving and selling stolen property.

12       So I know you objected to both of those.  Those seem

13  to now be resolved.  Are there any other objections that the

14  Court would need to resolve?

15       MR. MCKENNA:  Your Honor, I think I had raised the

16  issue of acceptance of responsibility.  I would have to

17  concede, looking at the guidelines manual, that -- I understand

18  the Government's position that you can't get acceptance if you

19  also have obstruction, and here we have two instances of

20  obstruction, the affidavit and then the trial testimony.  So I

21  understand their position.  And I would have to say that's

22  probably a long shot that he would get acceptance, so I'm not

23  going to press that issue at this time, Your Honor.

24       THE COURT:  All right.  I should also note for the

25  record that you are, in fact, speaking on Mr. Beckles' behalf

1  at this point which was not true at trial.

2          MR. MCKENNA:  That's correct, Your Honor.  He gave me

3  the green light to act as his counsel at sentencing.

4          THE COURT:  Is that right, Mr. Beckles?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  Very well.  Just wanted to make sure that

7  was clear for the record.

8          Any other objections besides those issues?  You can

9  confer with your client.

10     (Defendant conferred with his counsel.)

11         MR. MCKENNA:  No, Your Honor.  I think we are ready

12  to proceed.

13         THE COURT:  All right.  I'll give the Government an

14  opportunity to respond to those objections, but first does the

15  Government have its own objections to the presentencing report?

16         MR. RILEY:  No objections, Your Honor.  One minor

17  clarification which is on page 2.  Under the release status

18  section, it notes that the defendant was arrested on related

19  state charges on January 27, 2018.  The proper date is

20  January 26, 2018, so the defendant should get an extra day's

21  credit for time served.

22         MR. MCKENNA:  I 100 percent agree.

23         THE COURT:  I'm sure you would appreciate the extra

24  day, and so we'll make that adjustment.

25         I'll hear from the Government.  I think Mr. McKenna

1  did go ahead and make his full argument.  I'll hear from the

2  Government if you want to respond at this point to the issues

3  related to acceptance of responsibility and obstruction of

4  justice.

5          MR. RILEY:  Your Honor, I don't want to belabor the

6  points made in the Government sentencing submission with

7  respect to acceptance.  The application note to -- it's 3E1.1,

8  sort of sets out the exceptional circumstances where it may be

9  appropriate where a defendant who proceeds to trial --

10         THE COURT:  On just a legal issue.

11         MR. RILEY:  -- on just a legal issue and does not

12 contest his factual guilt, the application note talks about

13 where it might be appropriate for that defendant to get

14 acceptance.  This case does not fall within that very small

15 subset of categories.

16         Then, of course, we have the additional issue with

17 respect to obstruction.  I don't think there's any question

18 that this defendant -- nor do I understand the defense to be

19 contesting the enhancement with respect to obstruction of

20 justice.  I think the case law is clear and the Government

21 cited it, the case law in our sentencing submission.  The case

22 law is clear that it's only in extraordinary circumstances

23 where a defendant would get both acceptance of responsibility

24 credit but still face an obstruction enhancement.  And it's the

25 defendant's burden to establish that those extraordinary

1  circumstances apply.

2          That burden hasn't come close to being met here, and

3  the Government would ask this Court to both apply the

4  obstruction enhancement, based on the false affidavit and the

5  defendant's perjury of testimony, and deny any credit for

6  acceptance of responsibility.

7          THE COURT:  Anything further, Mr. McKenna?

8          MR. MCKENNA:  No, Your Honor.  I'll submit.

9          THE COURT:  All right.  So on the acceptance of

10  responsibility issue, Mr. Riley correctly articulated the

11  guidelines talk about this and says it is extraordinary; it's

12  rare that someone goes to trial and still receives credit for

13  acceptance of responsibility.  I don't know that the guidelines

14  necessarily contemplates what Mr. Beckles did in this case, so

15  I don't know that they considered the specific incident here,

16  but certainly what he did here does not fit within what the

17  guidelines sort of articulates as reasons why someone might go

18  to trial and yet still receive credit for accepting

19  responsibility.  I don't believe that what he did here merits

20  credit for acceptance of responsibility.

21          Somehow -- that was actually a closer call.  I did

22  spend time thinking about that.  I think I said the same thing

23  as to Mr. Fields.  I did spend some time thinking about that

24  given that he literally did stand up and say in opening

25  statement that he was accepting responsibility.  But I think

1   outside of extraordinary circumstances, accepting

2   responsibility involves formally pleading guilty to the

3   charges.  It doesn't require it, it doesn't require it.  But I

4   think it's an unusual circumstance where it doesn't involve it.

5   And I don't think this is such a circumstance.

6          The obstruction of justice decision for the Court was

7   actually easier.  And I say that -- and I don't know,

8   Mr. McKenna might have had this issue before me.  Obviously

9   Mr. Riley and Mr. Rigali don't appear before me that often.

10  Certainly their colleagues in Greenbelt know I'm actually not a

11  fan of the obstruction of justice enhancement after a trial

12  just based on someone taking the stand and testifying.  I often

13  do not give it.  I sometimes, depending on my mood, even give a

14  lengthy speech, which I actually think I've done in writing now

15  as well, about why I don't think individuals should be punished

16  for taking the stand at trial and just having their testimony

17  not believed by a jury.

18         But what Mr. Beckles did here was actually a lot

19  different than that.  You know, Mr. Beckles on a number of

20  occasions, not for the purpose of defending his own right to

21  trial but, frankly, just for the purpose of sort of mucking up

22  the works -- it's not a legal term -- just, you know, made up

23  what was clearly to the Court a fanciful story, a perjurious

24  story; again, not for the purpose of trying to defend himself

25  or defend his right to testify in his defense or defend his

1  right to challenge the Government's evidence as to him, but for

2  other reasons known only to him, decided to take the stand and

3  perjure himself.

4         So I do think that the obstruction of justice

5  enhancement is appropriate in this case, and so I am going to

6  apply it.

7         MR. RILEY:  Your Honor, I apologize, just so I'm

8  completely clear.  Your Honor referenced the fanciful story.  I

9  assume Your Honor was referring to the larger story about this

10 fictitious person called Aubrey?

11        THE COURT:  Yes.  That is what I'm referring to, both

12 in his testimony and his statements as he was acting as counsel

13 for himself, the statements he made in his affidavit.  Just

14 over and over again perjured himself before this Court.

15        MR. RILEY:  Okay.  Thank you, Your Honor.

16        THE COURT:  Sure, I appreciate it.  If you didn't

17 feel like I made the record clear enough, I certainly

18 appreciate you pushing the Court to do that.  I don't mind that

19 at all.

20        MR. RILEY:  Thank you, Your Honor.

21        THE COURT:  All right.  So those are my rulings

22 there.  At this point, I'll calculate the guidelines.  There

23 are four counts; all four counts group together.  Base offense

24 level is a six.  Intended loss here was more than $550,000 but

25 less than $1.5 million so we add 14 levels.  That gets us to a

1    22.  Ten or more victims involved add an additional two levels.

2    That gets us to -- actually, no, I'm sorry.  I'm bad at math,

3    and that's why I take my time doing it.

4         Base offense level is six.  The first enhancement

5    plus 14 gets us to 20.  Then you add two additional levels to a

6    22 because 10 or more victims are involved.  I feel like I'm

7    off somewhere here.  The base offense level is then a 22; is

8    that correct?  Or am I missing something?

9         The obstruction of justice enhancement.  That adds

10   two additional levels.  That brings us to a 24.  So offense

11   level 24 and an offense level -- Criminal History Category of I

12   because he has no criminal history score.  That brings us to a

13   24 offense level, Criminal History Category I which brings us

14   to an advisory guideline range of 51 to 63 months.  The maximum

15   on Count 1 is 60 months, but there is a 120-month maximum on

16   each of Counts 2 through 4.

17        Is there any objection other than those issues

18   already discussed, as to the Court's calculation of the

19   guidelines?

20             MR. RILEY:  Not from the Government, Your Honor.

21             MR. MCKENNA:  Not from the defense, Your Honor.

22             THE COURT:  All right.  Mr. Riley, I did obviously

23   review the victim impact statements.  I don't know if there are

24   any victims who wish to address the Court here today.

25             MR. RILEY:  We have no victims present today.  The

1  victims have been notified about the sentencing.

2          THE COURT:  All right.  Then I'll hear from the

3  Government regarding your sentencing recommendation.

4          MR. RILEY:  Yes, Your Honor.

5          THE REPORTER:  Can you move the mic closer?  Thank

6  you.

7          THE COURT:  Or might be easier to go to the podium.

8  The mic is usually in a better position there.

9          MR. RILEY:  Yes, Your Honor.  Your Honor, the

10 Government is asking this Court to impose a sentence of 96

11 months.  This is a variant sentence above the sentencing

12 guideline range, and it's the appropriate sentence in this

13 case.  Your Honor has the Government sentencing submission.  I

14 don't want to spend too much time belaboring the points made in

15 that submission, but I do want to talk briefly about a couple

16 of 3553(a) factors that are germane here.

17         With respect to the nature and circumstances of the

18 offense, no question, this defendant's offense is quite, quite

19 serious.  It's part of a far-reaching conspiracy involving the

20 burglary of 20 homes, homes in Maryland, homes in Georgia, the

21 theft of hundreds of thousands of dollars worth of property

22 from the victims in this case.

23         And this defendant, Your Honor, wasn't just a member

24 of the conspiracy.  He was one of its key players.  He was

25 personally involved in the burglary of all 20 homes.  He was

1  the one who broke through the homes' front doors.  He was the
2  one who entered the homes.  He was the one who stole items from
3  the homes.  He was a critical member of this conspiracy with
4  Mr. Brown and Mr. Fields.

5          Your Honor heard the testimony at trial.  Your Honor
6  heard about the property stolen, property of all types,
7  watches, fine jewelry, handbags, et cetera, and obviously those
8  items had significant monetary value.  The monetary value of
9  those expensive items stolen are one of the key drivers of the
10  sentencing guidelines in this case.

11          But more important than the monetary value of these
12  items, Your Honor, is the sentimental value that these items
13  had to the victims.  We heard repeatedly from our victims
14  talking about jewelry that was given to them by a loved one, a
15  father who passed away, a mother who passed away.
16  Ms. MacDonald talked about that, Dr. Yazaji talked about that.
17  We heard about baby jewelry given for baptisms and other
18  important family events.  Much of this property, Your Honor,
19  hasn't been recovered by law enforcement.

20          THE COURT:  Let me ask this question, and then
21  obviously you can continue back to any other point you want to
22  make.  One of the things that I really, really try to hone in
23  on, particularly when the Government is asking for and I'm
24  considering an above-guideline sentence, is what do you see as
25  the key factor or factors not considered by the guidelines,

1  right?  Maybe I asked you this on Mr. Fields -- he might have

2  ended up getting a guideline sentence, if I remember

3  correctly.

4          MR. RILEY:  I believe he got the --

5          THE COURT:  60 months.

6          MR. RILEY:  60 months was the statutory maximum for

7  the one count he was convicted of, Your Honor.

8          THE COURT:  Right, but I think it also happened to be

9  his guidelines if I'm --

10         MR. RILEY:  Yes, Your Honor.

11         THE COURT:  Here you're asking me to go above the

12 guidelines.  The number -- so these are some of the things I

13 was thinking about as I was preparing.  You've already talked

14 about the loss amount, the value of the items, the guidelines

15 considers that.  Obviously one thing that came to my mind was

16 the sheer breadth, the scope of it.  The number of victims is

17 included in the guidelines.

18         So just as I'm trying to process it and process your

19 argument -- and I came in with an open mind, I'll confess isn't

20 always the case.  I often have a pretty clear sense of what I'm

21 going to do at sentencing.  But I came in with an open mind.  I

22 want to understand what the Government sees as the factors here

23 that I should say you know what, the guidelines just didn't

24 consider this, I have to go above this

25         MR. RILEY:  Yes, Your Honor.  I opened with talking

1   about the monetary value and the sentimental value of the

2   property, but the next point I was going to make, Your Honor,

3   is that the monetary value, even the sentimental value, is less

4   important than the impact these burglaries had had on the

5   victims in this case.  I don't think the guidelines capture the

6   impact that this defendant and his co-conspirators had on the

7   victims in this case.

8           Your Honor referenced the guidelines capturing a

9   number of the victims.  The guidelines refer to ten or more

10  victims.  We have double that sort of threshold set by the

11  guidelines.  I was going to make this point later, but I'll

12  make it now.  2B1.1 is a guideline that's used for fraud cases,

13  economic property crimes.  In many respects, in many respects

14  when Your Honor looks at the victim impact statements and the

15  victims talking about not feeling safe and secure in their

16  homes.  Their children -- for example, Ms. Hessen talked about

17  this, her child sleeping on a chair in her bedroom for two

18  years because the child was afraid about someone coming into

19  her house and burglarizing the home again.  Victim impact like

20  that I would say is relatively rare in cases captured by 2B1.1.

21          Having worked crimes against persons, robbery cases,

22  things like that, comments like that from victims are more akin

23  to the type of victim impact statements that you see, at least

24  based on my experience, in the guidelines for robbery or other

25  crimes against person -- people.  I'm not suggesting that

1   people were harmed physically in connection with the offenses

2   in this case.  What I'm talking about is the psychological

3   impact, the long-lasting psychological impact harm that these

4   20 burglaries have had on the victims in this case, and we see

5   that -- that sort of theme repeatedly in the victim impact

6   statements that were submitted to the Court.  20 families

7   impacted, 20 families' lives forever changed by this

8   experience, the loss of feeling safe and secure in one's

9   home.

10          Your Honor talked just a moment ago about the

11  far-reaching nature of this conspiracy.  From the Government's

12  perspective -- this is a differentiating factor here too, it's

13  a significant aggravating factor.  These burglaries occurred

14  over a two-month period of time.  This wasn't some sort of

15  one-off.  It wasn't a one-off situation driven by financial

16  desperation, hard times for this defendant.  I think that

17  argument would have some weight if we were talking about, you

18  know, just a single burglary.  But what we have here, Your

19  Honor, is the defendant doing it once in that very first

20  burglary of Dr. Yazaji's home, more than $100,000 worth of

21  property was taken.

22          Even after getting that substantial haul, the

23  defendant and Mr. Brown continued 19 more times, burglarizing

24  homes.  And they did so in a sophisticated manner that

25  reflected substantial premeditation and deliberation which,

1    again, is an aggravating factor from the Government's

2    perspective.  We have the researching of areas.  We have the

3    conducting of surveillance.  We have a use of two-way radios

4    during --

5            THE COURT:  So in lieu the trial was a while ago now

6    so you have to help refresh some of my recollection.  As I

7    recall it, Mr. Brown was at the forefront of most of that, or

8    are you suggesting that Mr. Beckles had a greater role in that

9    than maybe I'm remembering?

10           MR. RILEY:  I would agree with the Court that

11   Mr. Brown -- I'm not disputing and I think this is the truth,

12   that Mr. Brown was the organizer of the criminal enterprise.  I

13   embrace that.  But the Court may recall there was a reference

14   to Dark Knight.  Mr. Brown referred to himself as Dark Knight,

15   Batman.  Who was Batman's sidekick, Robin.  That's how

16   Mr. Brown, at least on one occasion, referred to Mr. Beckles.

17           It was a team effort, Your Honor.  This defendant had

18   multiple, multiple cell phones, including a cell phone that

19   bore a name of a fictitious person.  So the conspiracy itself

20   was -- it was sophisticated and while the defendant may not

21   have been an organizer of that conspiracy, he certainly was

22   part of it.

23           THE COURT:  While we're talking about Mr. Beckles'

24   role as well -- and I think there is some discussion of this in

25   Mr. McKenna's submission.  While the trial was going on -- I

1  don't think this would surprise anyone; you know, I've been

2  doing this for a while in different roles obviously -- I found

3  myself wondering what Mr. Beckles' motivation was.  I want to

4  be careful about putting out just sort of my thoughts but,

5  look, I pull my decisions ultimately from my thoughts.  One of

6  the things I started wondering is I wonder if he's just scared

7  of this guy, and I wonder how much of that played into the

8  dynamic of their relationship.

9        I've obviously started looking at Mr. Brown's

10  background which is obviously different from Mr. Beckles'

11  background.  Obviously there's, again, some indication -- I

12  don't know what Mr. Beckles is going to say today.  I await

13  that.  I'm sure you don't know either -- or if he's going to

14  say anything today.  But certainly even in reading some of Mr.

15  McKenna's submission, I then start to see some of what I was

16  wondering about.

17        I guess I would ask -- obviously Mr. Brown's day is

18  coming up, so it might be a discussion we have then too as to

19  Mr. Brown.  But as to Mr. Beckles, I just wonder how much of

20  that I should consider or if you think I shouldn't consider

21  that at all; Mr. Beckles is his own man, made his own

22  decisions.

23        MR. RILEY:  So I cannot speak to this defendant's

24  motivations for why he did what he did.  Is it possible he was

25  scared of his cousin, Mr. Brown?  Sure, that's possible --

1        THE COURT:  It goes to the point you were just

2    making.  I don't mean this to be critical but you were just

3    speaking of his motivation.  He didn't just do it one time, he

4    kept doing it, right?  So it's like, well, was he doing that

5    because he was trying to make more money or because he's

6    working with his cousin who maybe he's a little scared of?  I

7    don't know.  I'm asking.

8        MR. RILEY:  I think, Your Honor, if -- once maybe,

9    twice maybe.  19 times over a period of two months, multiple

10   trips out of state.  This defendant was living in New Jersey.

11   Multiple trips without his cousin, Mr. Brown.  On occasion they

12   would meet here in the area.  This defendant, he had the

13   opportunity to say no to his cousin.  He may have been -- maybe

14   he was scared of his cousin.  Your Honor, I haven't seen, I

15   haven't seen an indication -- obviously we put a lot of work

16   and time into reviewing text messages.  We had a slew, a huge

17   number of text messages introduced at trial from the almost ten

18   cell phones -- I think it was nine cell phones seized in

19   connection with this case.  I didn't see a single text message,

20   single email where this defendant tried to say no to his

21   cousin.

22       During Mr. Fields' sentencing, we did see, I think --

23   I'm sorry, during trial with respect to Mr. Fields, there was

24   an exchange between Mr. Fields and Mr. Brown about a potential

25   burglary down in Georgia.  In that text message we saw

1    reluctance on behalf of Mr. Fields.  And Mr. Brown I think

2    responded to Mr. Fields along the lines of "in this game you

3    can't be scared" -- I'm paraphrasing, Your Honor.  But there

4    was a back and forth, and you could see some reluctance from

5    Mr. Fields with respect to his criminal activity and perhaps

6    his -- I don't know if fear is the right word for it but

7    recognition of his cousin's expertise in this realm.

8            The Government has not seen that from this defendant.

9    Could it be there?  Of course it could be there, could have

10   been there, but I haven't seen evidence of it and none has been

11   presented.

12           I want to talk about the affidavits that were -- not

13   affidavits, excuse me.  The 302s that we provided to the

14   defense and that the defense provided to the Court to sort of

15   address this broader issue of why potentially Mr. Beckles did

16   what he did.  I don't think we have facts.  I don't think the

17   Court has facts before it to suggest that Mr. Brown threatened

18   Mr. Beckles or threatened one of his family members, and that's

19   why he did what he did.  I don't think the --

20           THE COURT:  Let me also clarify, the "did what he

21   did" could mean two things, both of which are relevant.  "Did

22   what he did" could mean the robberies -- I didn't make this

23   clear so let me make this clear.  "Did what he did" could be

24   the robberies.  It could also be what he did in Court which he

25   has received a two-level enhancement for, and so it could be

1   either of those things.

2          MR. RILEY:  Yes, Your Honor.  I'm going to focus on

3   what he did in court.  I think that's what the defense has

4   argued, that this defendant perjured himself at trial

5   repeatedly because he felt threatened by Mr. Brown and was

6   potentially scared for a family member.  From the Government's

7   perspective, there aren't specific facts before the Court for

8   you to make that finding.  The Government learned from the

9   probation officer about a purported threat during an interview

10  with Mr. Brown's mother.

11         Mr. Brown's mother, Ms. Tennet [phonetic], said that

12  she had heard -- let me get this right.  Probation informed the

13  Government that Ms. Tennet had heard that Brown had threatened

14  to send someone to harm Beckles' mother if Beckles spoke with

15  law enforcement.  Probation provided that information to the

16  Government, Your Honor.  We had the agents -- Detective Walder

17  follow up to find out what the truth is, what was going on.

18  The FBI -- Detective Walder spoke with Brown's mother who told

19  him that she had heard from her sister, not Mr. Beckles' mother

20  but a common sister, Ms. Marshall, that Brown had threatened to

21  take out Mr. Beckles' mother if Beckles spoke to law

22  enforcement.

23         FBI then spoke with that person, the source of this

24  information, Ms. Marshall, and she said that she had heard that

25  information from Beckles' mom herself.

1       FBI then spoke with Mr. Beckles' mom, and she said

2  that she had heard that Brown had threatened to kill Beckles if

3  he gave information or talked to law enforcement about their

4  case.

5       But when asked about the source of this information,

6  Your Honor, she said she had heard from still another family

7  member and that he had heard the information from a friend.

8       THE COURT:  The evidence is mushy at best, I get your

9  point.  Let me ask this question.

10      MR. RILEY:  Yes, Your Honor.

11      THE COURT:  You have also been doing this a while.

12 I'm not trying to make either of us feel old, but you have also

13 been doing this for a while.  I would assume that what

14 Mr. Beckles did at trial was unusual in your experience as

15 well.  I would assume that at some point, you wondered what his

16 motivation was.  Other than fear of his co-defendant, what

17 other motivation could you even imagine for his behavior in

18 court?

19      MR. RILEY:  I was going to make this point, Your

20 Honor.

21      THE COURT:  Please.

22      MR. RILEY:  I think Mr. Beckles -- his perjurious

23 testimony at trial was basically a role of the dice.  It was a

24 wager.  He knew that his sentencing guidelines after trial,

25 even with an obstruction enhancement -- remember, he filed that

1    affidavit back in November 2018, years before the pandemic.  He

2    knew that his guidelines would be much, much lower than that of

3    Mr. Brown who has a significant criminal history, who was the

4    ring leader, as we all know -- and we'll deal with that at

5    Mr. Brown's sentencing -- who is facing significant backup time

6    in other jurisdictions.  So Mr. Beckles figures why not?  Why

7    not try to exculpate Mr. Brown?  Why not try to help my cousin?

8    Why not try to help him by lying under oath and having more

9    control over the situation by proceeding to trial, doing it

10   pro se.

11            THE COURT:  Just out of love for his cousin?  I'm not

12   saying that couldn't have been a reason.

13            MR. RILEY:  Out of love for his cousin and I think in

14   consultation with his cousin.  Your Honor may recall during

15   cross, I talked to Mr. Beckles about him being in I think the

16   same pod or quad at CDF as Mr. Brown and them spending time

17   together.  So I think it was a plan hatched together.  Not

18   necessarily a plan, a course of action chosen under duress, but

19   they were working together, hatching this plan together,

20   perhaps drafting that affidavit together.

21            So I think it boils down to a wager.  How much is it

22   going to hurt me if I proceed pro se, testify at trial, attempt

23   to testify during opening statement, closing statement, put

24   inadmissible evidence -- attempt to put that sort of evidence

25   in front of the jury and see what happens, knowing that his

guidelines were low.  I think that's the explanation or how the

Government is viewing what Mr. Beckles did vis-a-vis his trial

testimony.

And that testimony, you know -- Your Honor

characterized it as sort of a fanciful story about a fictitious

person, this person Aubrey.  It wasn't just a small lie.  It

was a repeated lie for a significant length of time, during the

trial testimony and during cross-examination.  The lies were

persistent and repeated.

So the Government views that sort of attempt to

subvert the truth-seeking function of a jury trial, to subvert

justice as, you know, a very serious aggravating factor.  And

could this defendant, could this defendant have been afraid of

Mr. Brown?  Sure.  But I don't think, I don't think we have

facts.  I don't think the facts support a conclusion along

those lines.  So one of the reasons the Government is asking

for a variant sentence above the guidelines is directly related

to this subversion of the truth-seeking function of the justice

system and the way he behaved at trial.

From the Government's perspective, Your Honor, in a

lot of respects at trial, it seemed like he relished, he was

enjoying the opportunity to tell his story at trial, was having

fun with it and completely disrespecting the process.  So when

it comes to the need to promote respect for the law, the need

to provide just punishment, I think his behavior at trial is

1    one of the factors that warrants the variant sentence sought by

2    the Government here.

3            If Your Honor has additional questions about the

4    Government's recommendation, I'm happy to answer them.  The

5    Government would ask this Court to impose a sentence of 96

6    months' imprisonment along with three years' supervised release

7    in this case.

8            THE COURT:  Thank you.  Mr. McKenna, I'll hear from

9    you.  It's up to you; if you want to sit there, as long as

10   you're close to a microphone, it's fine with me.

11           MR. MCKENNA:  I think both of us have a long ride

12   back to Greenbelt so I'll stand up.

13           Your Honor, we all sat through a trial for several

14   weeks.  You have the PSRs, you have the memorandums, you have

15   the victim impact, you've gone through Fields' sentencing.  I

16   was thinking what can I say to Your Honor that you haven't

17   already heard.  I will say at the onset, I've been a lawyer 25

18   years, going on 26 years.  I don't like what happened, sort of

19   the obstruction aspect in the court -- I have a good deal of

20   reverence for the judicial system, for the court system; I

21   didn't like that either.  I will say this though.  You know, in

22   the normal case for a first-time offender like Mr. Beckles, if

23   he accepted responsibility, if he didn't have the obstruction,

24   his guidelines would have been 30 to 37 months.  That's what

25   his guidelines would have been.

1    Because of his affidavit, because he obstructed

2    justice, he didn't get acceptance; he got the obstruction, and

3    his guidelines are now 51 to 63 months, almost doubling his

4    guidelines.  I would say at the onset, I think the guidelines

5    have effectively punished him for that conduct in almost

6    doubling what the guidelines were.

7    You know, I couldn't understand and just didn't

8    understand what my client was doing.  That Brown was the

9    quote/unquote mastermind of this to me was obvious.  I didn't

10   know whether this was some mistaken or misguided loyalty to his

11   cousin, I just didn't know what was going on.  But I had a

12   unique perspective because I was more of a spectator than

13   anything else.  I got to watch Demar Brown just scowling at Mr.

14   Beckles, scowling at Mr. Fields during this trial.  I'm sure

15   Your Honor saw that as well.

16   It's pretty clear who the person running the show

17   was.  Why else would my client have given that affidavit?  I

18   agree with the Government.  I have no doubt at all that Demar

19   Brown -- the verbiage in that affidavit came from Demar Brown.

20   Why else would you have a trial plan where you stand up in

21   opening statement and you admit that you did it?  Why would he

22   be helping this guy who clearly did not respect him?  Who

23   referred to him in phone calls, "Mr. Can't Get It Right."  Why

24   else, if not the fear?

25   I will address the argument that he did this in some

1    sort of calculated way, "Hey, I'm not looking at as much time."

2    He sat in CDF for four years as COVID ravaged CDF.  He's

3    sitting in there for four years with very little contact at all

4    with his family, very little contact, in fact, with his lawyers

5    because of the COVID, at least for two and a half of the years.

6    So the idea that he'd sit there, that that was his plan I think

7    is ludicrous, frankly.

8            We got the 302s, frankly, because the Government

9    comported with their *Brady* obligations and I thank them for it.

10   That's not something that Mr. Beckles generated.  That's not

11   something that we even knew about until they were sent to us,

12   Your Honor.

13           Demar Brown, in my mind, was clearly the guy who was

14   running the show.  The guy who -- incidentally, let's look at

15   the roles.  Where is Brown during the burglaries?  He's sitting

16   in the car with the heat running, right, as he sends

17   Mr. Beckles in so that he can be on any surveillance videos.

18   He'd be the guy at risk if there's a dog or a homeowner has a

19   weapon.

20           You have the notes, the planning and everything in

21   Mr. Demar Brown's handwriting, in a notebook from his car.  And

22   where do you suppose the money that was taken, who do you

23   suppose got the money and the valuables in this case?  We know

24   about some of them that were left with Ms. Hart, but is it any

25   doubt that it's with Mr. Brown and not with Mr. Beckles?

1           Again, none of that takes away from Mr. Beckles'
2    guilt but it may explain some of the oddness, frankly, of what
3    we saw.  I, frankly, think the guidelines have accounted for
4    everything that the Government says is aggravating, the
5    guidelines have accounted for.
6           I don't know, they talk about the psychological
7    impact and I'm not going to diminish that --
8           THE COURT:  I'm going to add in terms of giving you a
9    chance to respond to what the Court is thinking in that
10   regard --
11          MR. MCKENNA:  Sure.
12          THE COURT:  -- the psychological impact as to both
13   individual and community by the way these cases were and these
14   robberies were playing out.
15          MR. MCKENNA:  And it's almost impossible for me to
16   fight that.  I don't know what I can say.  I've had my house
17   burglarized, my mother's house was burglarized; it does have an
18   impact.  I would be disingenuous to suggest it doesn't but as a
19   reason to --
20          THE COURT:  Even beyond the individual -- there
21   hasn't necessarily been testimony about it, but it's not hard
22   to imagine just from sitting through the trial, looking at the
23   maps and how these were relatively close to each other taking
24   place over a period of time, I imagine anyone living in that
25   community was terrified that this was going on.  I just wonder

1    how much of that the Court should consider.

2              MR. MCKENNA:  Your Honor, I think that's fair

3    commentary, no doubt about it.  That's why we have guideline

4    ranges.  Maybe that's a reason to give a sentence towards the

5    top end of the guidelines as opposed to the bottom end of the

6    guidelines in this case.  But, Your Honor, with those 302s,

7    yes, it's kind of squishy because there's not a large

8    investigation on this, but it's circumstantial evidence

9    certainly, I would think.  You could infer what's going on

10   here, and it does certainly speak to what we saw in the court

11   and sort of the trial strategy, if you will, that Mr. Beckles

12   took, and the affidavit that did him no good and just ensured

13   that he would absolutely be convicted.

14             You have in front of you somebody who's 36 years old

15   with no record at all.  His only contact with the criminal

16   justice system occurred when he was 17 years old.  He's not had

17   the perfect life.  He spent time in foster care as a kid.  He's

18   managed to get certificates in plumbing, electrical work.  I

19   think he even worked as a substitute teacher.  He did find

20   himself in the end of 2017, going into 2018, unemployed and

21   from time to time homeless.  I think he indicated he spent time

22   on people's sofas.

23             You know, Mr. Beckles did what he did.  He absolutely

24   should be punished, but again, I would suggest that the

25   factors, with the possible exception of sort of the impact on

1    the community, it's been taken into consideration under the

2    guidelines, Your Honor.

3            When I was thinking about the acceptance of

4    responsibility, you know, it is -- he testified -- he admitted

5    his own guilt.  He's always admitted his own guilt.  And he

6    certainly, what he did, the obstruction, he didn't do it for

7    himself.  He didn't do it to escape a punishment for himself or

8    better his situation.  But, Your Honor, I would ask you to take

9    a look at his motivation, what I think is likely motivation

10   because I can't -- for the life of me, I can't figure out any

11   other reason why he would have written that affidavit.  I can't

12   see any reason why he would have stood up in opening statement

13   and testify the way he did.  I can't see any reason why he

14   would take the witness stand and testify the way he did.  I

15   don't know why any sane person would sit in CDF four years,

16   knowing full well that if he had gone a different way, he would

17   have been released, especially at a time when there's a deadly

18   virus ravaging the facility.

19           You have a guideline range of 51 to 63 months.

20   Again, I think that counts for the obstruction, he doesn't get

21   the acceptance.  In my submission, I ask the Court for 60

22   months, towards the very top end of the guidelines.  I think

23   that that is an appropriate sentence under the circumstances.

24   And I would ask -- I would point out that, you know,

25   incarceration during COVID has been something far more onerous

1     and far more difficult than incarceration in better times, say

2     2019.  It was still not great in 2019, but it became darn near

3     unbearable for several years.  I think the Court ought to look

4     at that too as a reason to not give as long a sentence as the

5     Court would otherwise give.

6             So my request, Your Honor, is respectfully I'm asking

7     you to consider a sentence of 60 months.  Also I'm asking the

8     Court to consider that that time be served at Fort Dix.  I

9     think that's the closest facility for Mr. Beckles.

10            THE COURT:  Okay.

11            MR. RILEY:  Your Honor, may I just speak very, very

12    briefly before the defendant allocutes?

13            THE COURT:  The only time I allow the Government to

14    do that is if there is some factual record that you feel

15    defense might have gotten wrong.  If it's just to rebut

16    argument, Government gets a turn; then defense gets a turn.

17            MR. RILEY:  That's fine.  Thank you, Your Honor.

18         (Sealed conference at the bench.)

19         (It is the policy of this court that every guilty plea and

20    sentencing proceeding include a bench conference concerning

21    whether the defendant is or is not cooperating.)

22         (The following was held in open court:)

23            THE COURT:  Mr. Beckles, you have an absolute right

24    to address the Court before sentence is imposed.  I do want to

25    be clear, you are not required to speak.  Obviously you spoke a

 1    lot during the trial but you're not required -- even having

 2    done that, you're not required to speak today if you don't want

 3    to.  But if you wish to be heard today, I do want you to know

 4    I'd be eager to hear anything you have to say.  You can sit

 5    right you are.  Just make sure you pull the microphone down to

 6    you so I can hear you.

 7              THE DEFENDANT:  Yes, sir.  I just want to say I'm

 8    truly sorry for this whole turnout.  My involvement in this

 9    whole thing, this really isn't me.  My character, my demeanor

10    towards other people's property, I'm just truly sorry for

11    everything and putting everyone, including all the victims,

12    through what I've done.  You know, I'm just sorry for it, the

13    whole outcome of what's taken place.

14              THE COURT:  Thank you, sir.  Give me a moment just to

15    look over my notes that I've taken.

16         (Pause.)

17              THE COURT:  After calculating the guidelines and

18    departures and hearing argument, I have to consider the

19    relevant factors set out by Congress at 18 USC 3553(a) and

20    ensure that I impose a sentence that's sufficient but not

21    greater than necessary to comply with the purposes of

22    sentencing.  These purposes include the need for the sentence

23    to reflect the seriousness of the crime, promote respect for

24    the law, and provide just punishment for the offense.  The

25    sentence should also deter criminal conduct, protect the public

1    from future crime by the defendant and promote rehabilitation.

2    In that regard, I've considered the nature and circumstances of

3    the offense, the history and characteristics of the defendant,

4    the need to avoid unwarranted sentencing disparities among

5    similarly situated defendants, the types of sentences

6    available.

7         Mr. Beckles was born in December of 1985 in Kingston,

8    Jamaica.  He had what appears to the Court, at least from

9    reading the presentencing report, a very difficult childhood

10   which included time in foster care and group homes.  He doesn't

11   seem to be someone who complains about that.  That also -- I

12   took note of that even in the presentencing report, but it does

13   seem like that must have been a challenge for him.

14        He nonetheless graduated from high school, attended

15   some college.  He has a diploma, as I understand it, in

16   computerized accounting.  He does not seem to have had much in

17   terms of consistent employment, at least in the time just prior

18   to his arrest.

19        I do note that he does not have any prior adult

20   criminal convictions.  He's described by family members as

21   polite, respectful and loving.

22        I think he has shown some level of remorse, although

23   his -- it's been referred to as trial strategy, I'm not even

24   sure what exactly it should be referred to as -- but, you know,

25   the way in which he conducted the trial in some ways takes away

1  from that remorse.  True remorse I think has more of a

2  truth-seeking function to it, and he seemed very much to be

3  standing in the way of truth seeking at trial.  So I'm not

4  really sure how to gauge his remorse.  He has expressed

5  remorse, and I do take that into account.

6      I'll also note because I think it's relevant to his

7  history and characteristics, relatively speaking for someone

8  with no legal background, I found him to be respectful to the

9  Court.  I was somewhat impressed by his intellect and his

10  ability to present a theory to the jury, even if it was one

11  that the Court and the jury ultimately found to be fanciful and

12  untruthful.  I did find myself at times wondering if he had

13  chosen a different path for himself in life, how certain

14  abilities that he did demonstrate could have taken him in a

15  different direction, and that's certainly unfortunate.

16      Regarding the nature and circumstances of the

17  offense, he was involved in a burglary conspiracy that involved

18  20 home burglaries throughout Baltimore County and Georgia.  I

19  sat through the trial, as everyone here did, so I don't need to

20  go into great detail.  I will note -- and I noted it in my mind

21  during the trial -- he clearly was not the ring leader.

22  Mr. Brown's day is coming.  It's not Mr. Brown's day today.

23  But Mr. Beckles was clearly not the ring leader.  He was more

24  involved, in the Court's view -- and I think the facts bear

25  this out -- than Mr. Fields was.  But still I think the gap

1  between -- and I'm considering this in my sentencing.  The gap

2  between him and Mr. Fields was significantly smaller than the

3  gap between him and Mr. Brown in terms of culpability.

4         So I would rank them and my sentence will ultimately

5  reflect this -- although I haven't decided Mr. Brown's exact

6  sentence yet -- I would rank them as Brown, Beckles, Fields.

7  But I think Beckles and Fields are much closer together than

8  Beckles and Brown are, and my sentences will reflect that.  So

9  he's clearly not the ring leader of this conspiracy.

10        Regarding the seriousness of the offense, you know,

11 we've talked about this, the victim impact statements I think

12 cover this individually, and the Court kind of puts it together

13 collectively as well.  The fear instilled in the lives of each

14 individual victim, the feeling -- and you see it over and over

15 again in the statements -- of not being safe and secure in

16 one's own home, that feeling having been caused by the

17 defendant's actions here.  Also as a community, there was

18 discussion during trial and the Court could see how a lot of

19 these took place in the same area, I'm sure it caused

20 significant fear in the community even among those who were not

21 touched personally by the actions, and I do think some of those

22 things are not exactly covered by the sentencing guidelines.

23        I am considering the lengthy stay in CDF because of

24 COVID delays that, for reasons that he's not responsible for,

25 that were out of, frankly, everyone's control.  This trial got

1    delayed repeatedly, causing him to stay in CDF rather than in

2    BOP, making at least some of the time he has already served

3    thus far a little more difficult than that which he would have

4    served had he gotten a trial date a little sooner and was able

5    to serve that time in BOP.

6          I am, of course, considering the need to avoid

7    unwarranted sentencing disparities among defendants with

8    similar records and culpability.  Certainly, as I've already

9    indicated, I'm considering Mr. Fields' sentence.  I think he's

10   more culpable than Mr. Fields which takes him slightly above

11   where Mr. Fields was.  I think he's significantly less culpable

12   than Mr. Brown, at least that's the Court's view of it.  And so

13   to the extent that I have some sense -- I did at least review

14   Mr. Brown's PSR, I have some sense of where the Court, at least

15   sort of range of where that could come out.  I've considered

16   that as well in terms of making sure Mr. Beckles fits in in the

17   right place.

18         So I do think that a slight upward variance is

19   appropriate here because of the nature of the acts, the way in

20   which he terrorized a community, the scope of the activity and

21   the harm caused both individually and collectively, however,

22   not as significant an upward variance as the Government is

23   seeking.

24         So ultimately the sentence that I believe is

25   sufficient but not greater than necessary to comply with the

1   purposes set out in 18 USC 3553(a)(2) is a total sentence of 76

2   months' incarceration.  That breaks out as 60 months on Count 1

3   and 76 months on each of Counts 2 through 4 to run -- all those

4   sentences run concurrent to each other -- for a total sentence

5   of 76 months.

6            Regarding supervised release, as to Count 1, three

7   years, and as to Counts 2 through 4, five years each; all

8   concurrent for a total of five years.

9            I will go through the conditions of release.  I now

10  take the time to go through all of them, having had at least

11  one case come back to me where I did not do that.  Although I

12  do recognize there are other ways to go about this, but this is

13  my approach now.  So I'm going to go through all of your

14  conditions of release with you.

15           Once you are placed on supervised release, you must

16  not commit another federal, state or local crime.

17           You must not unlawfully possess a controlled

18  substance.  You must refrain from any unlawful use of a

19  controlled substance.

20           If deemed applicable, you must make restitution.  Has

21  there been a request for restitution?

22           MR. RILEY:  No, Your Honor.  The only request came

23  for Mr. Fields' sentencing.  That was for in-kind restitution

24  so it's not an issue here.

25           THE COURT:  Okay.  You must cooperate in the

1  collection of DNA if directed to do so by the probation

2  officer.

3           You must report to probation in the federal district

4  where you are authorized to reside within 72 hours of your

5  release from imprisonment.  After your initial report, you will

6  receive instructions about how and when you must report to the

7  probation officer, and you must report to the probation officer

8  as instructed.  You must not knowingly leave the federal

9  judicial district where you are authorized to reside without

10  permission from either me as the Court or probation.

11           You have to answer truthfully any questions asked by

12  probation.

13           You must live at a place approved by probation.  You

14  must allow the probation officer to visit you at any time at

15  your home or elsewhere.

16           You must work full-time.

17           You must not communicate or interact with someone you

18  know is engaged in criminal activity.  If you are arrested or

19  questioned by law enforcement, you have to notify probation of

20  that within 72 hours.

21           You must not own, possess or have access to a

22  firearm, ammunition, destructive device or dangerous weapon.

23           You cannot agree to work with law enforcement as a

24  confidential source or informant without getting the Court's

25  permission.

1      If probation determines you pose a risk to another

2  person, probation may require you to notify that person about

3  the risk.

4      You must follow the instructions of your probation

5  officer related to your conditions of supervision.

6      You must not communicate or otherwise interact with

7  any victim, either directly or through someone else, without

8  the permission of probation.

9      You must participate in a vocational services program

10  and follow the rules and regulations of that program.

11      You have to pay a special assessment in the amount of

12  $400 which would be $100 per count.

13      You must participate in a mental health treatment

14  program and follow the rules and regulations of that program.

15      I'm not going to impose a fine because I find that

16  you cannot afford one.  There hasn't been a request for

17  restitution.  I don't think there's a request for forfeiture

18  either.

19      MR. RILEY:  Correct, Your Honor.

20      THE COURT:  I have already imposed special assessment

21  of $400.

22      The Court recommends that provided the Bureau of

23  Prisons determines it's appropriate in terms of security level,

24  that you be placed at Fort Dix for your incarceration.

25      The sentence I've imposed is sightly above the

1   guideline sentence.  I've already discussed my reasoning for

2   that: specifically the nature of the crime, the way in which

3   the community and the individuals were really terrorized in

4   this case, and just the breadth and scope of the activities

5   that took place in this case.

6         I know there's at least one count that the Government

7   needs to dismiss, Count 5 of the second superseding, and I

8   assume any other indictments prior to that.

9         MR. RILEY:  Yes, Your Honor, the Government would

10  make that motion now and ask the Court to dismiss those open

11  counts.

12        THE COURT:  All right.  So Count 5 is dismissed as to

13  the trial indictment and then all prior indictments are also

14  dismissed.

15        All right, sir.  Because you went to trial, I want

16  you to understand that you can appeal your conviction.  You can

17  appeal any pretrial rulings that I made, and you can appeal the

18  sentence that I just gave you if you think the sentence I just

19  gave you is somehow unlawful.  You do need to understand that

20  if you want to file a notice of appeal, you need to do that

21  within 14 days of today's date.  I'm sure Mr. McKenna will help

22  you with that if you decide that's what you want to do.

23        The Court will issue a judgment and commitment order,

24  probably tomorrow, as well as a statement of reasons.  Is there

25  anything else the Court is forgetting to address today?

1          MR. RILEY:  No, Your Honor.

2          MR. MCKENNA:  No, Your Honor.  Thank you.

3          THE COURT:  All right.  Mr. Beckles, I wish you well

4    in the future, I really do.  As indicated during my sentencing,

5    some of my comments, in some ways I was impressed by you at

6    trial: that you could be respectful to the Court, that you

7    could very well articulate your thoughts even if I didn't agree

8    with what the thoughts were.  It just showed me that you are

9    someone who has ability, who has skills, who could do

10   productive things.  You'll have an opportunity to do that when

11   you get back out, and I hope you just make better choices with

12   your life.  But I do wish you well, sir.

13         THE DEFENDANT:  Thank you.

14         THE COURT:  Sure, take care.

15         THE CLERK:  All rise.  This Honorable Court now

16   stands adjourned.

17      (Proceedings concluded at 2:33 p.m.)

18
          I, Patricia G. Mitchell, RMR, CRR, do hereby certify
19   that the foregoing is a correct transcript from the
     stenographic record of proceedings in the above-entitled
20   matter.

21         Dated this 20th day of April 2022.

22

23                    *Patricia G. Mitchell*

24   _____
                 Patricia G. Mitchell
25               Official Court Reporter

**< Dates >**
**April 2022** 41:24 .
**August 30** 3:12 .
**January 26** 6:20 .
**January 27, 2018** 6:19 .
**January 27, 2022** 1:17 .
**November 2018** 23:1 .
**$1.5** 10:25 .
**$100** 39:12 .
**$100,000** 16:20 .
**$400** 39:12, 39:21 .
**$550,000** 10:24 .
**(1** 2:2 .
**(129** 2:2 .
.
.
**< 1 >.**
**1** 1:10, 3:14, 11:15, 15:20, 37:2,
     37:6 .
**10** 11:6 .
**100** 6:22 .
**101** 1:49 .
**10:00** 1:18 .
**120-month** 11:15 .
**14** 10:25, 11:5, 40:21 .
**17** 29:16 .
**18** 32:19, 37:1 .
**18-cr-00335-gjh-3** 1:10 .
**19** 16:23, 19:9 .
**1985** 33:7 .
.
.
**< 2 >.**
**2** 6:17, 11:16, 37:3, 37:7 .
**20** 11:5, 12:20, 12:25, 16:4,
     16:6, 16:7, 34:18 .
**2017** 29:20 .
**2018** 6:20, 29:20 .
**2019** 31:2 .
**2021** 3:12 .
**20th** 41:24 .
**21201** 1:50 .
**22** 11:1, 11:6, 11:7 .
**24** 11:10, 11:11, 11:13 .
**25** 25:17 .
**26** 25:18 .
**2:33** 41:17 .
**2B1** 15:20 .
**2B1.1** 15:12 .
.

.
**< 3 >.**
**30** 25:24 .
**302s** 20:13, 27:8, 29:6 .
**3553(a** 12:16, 32:19 .
**3553(a)(2** 37:1 .
**36** 29:14 .
**37** 25:24 .
**3D** 1:23 .
**3E1.1** 7:7 .
.
.
**< 4 >.**
**4** 3:14, 11:16, 37:3, 37:7 .
**4th** 1:49 .
.
.
**< 5 >.**
**5** 3:14, 40:7, 40:12 .
**51** 11:14, 26:3, 30:19 .
.
.
**< 6 >.**
**60** 11:15, 14:5, 14:6, 30:21,
     31:7, 37:2 .
**63** 11:14, 26:3, 30:19 .
.
.
**< 7 >.**
**72** 38:4, 38:20 .
**76** 37:1, 37:3, 37:5 .
.
.
**< 9 >.**
**96** 12:10, 25:5 .
**[phonetic]** 21:11 .
.
.
**< A >.**
**A.** 1:28 .
**a.m.** 1:18 .
**abided** 4:22 .
**abilities** 34:14 .
**ability** 34:10, 41:9 .
**able** 36:4 .
**above** 12:11, 14:11, 14:24,
     24:17, 36:10, 39:25 .
**above-entitled** 41:21 .
**above-guideline** 13:24 .
**absolute** 31:23 .

**absolutely** 29:13, 29:23 .
**acceptance** 5:16, 5:18, 5:22, 7:3,
     7:7, 7:14, 7:23, 8:6, 8:9,
     8:13, 8:20, 26:2, 30:3,
     30:21 .
**accepted** 25:23 .
**accepting** 8:18, 8:25, 9:1 .
**access** 38:21 .
**account** 34:5 .
**accounted** 28:3, 28:5 .
**accounting** 33:16 .
**act** 6:3 .
**acting** 10:12 .
**action** 23:18 .
**actions** 35:17, 35:21 .
**activities** 40:4 .
**activity** 20:5, 36:20, 38:18 .
**acts** 36:19 .
**actually** 8:21, 9:7, 9:10, 9:14,
     9:18, 11:2 .
**add** 10:25, 11:1, 11:5, 28:8 .
**additional** 7:16, 11:1, 11:5,
     11:10, 25:3 .
**address** 11:24, 20:15, 26:25,
     31:24, 40:25 .
**adds** 11:9 .
**adjourned** 41:16 .
**adjustment** 6:24 .
**adjustments** 3:9 .
**admit** 26:21 .
**admitted** 30:4, 30:5 .
**adult** 33:19 .
**advise** 4:10 .
**advisory** 11:14 .
**affidavit** 5:20, 8:4, 10:13, 23:1,
     23:20, 26:1, 26:17, 26:19,
     29:12, 30:11 .
**affidavits** 20:12, 20:13 .
**afford** 39:16 .
**afraid** 15:18, 24:13 .
**afternoon** 2:5, 2:22, 2:24,
     3:2 .
**age** 4:4 .
**Agent** 2:18 .
**agents** 21:16 .
**aggravating** 16:13, 17:1, 24:12,
     28:4 .
**ago** 4:6, 16:10, 17:5 .
**agree** 5:10, 6:22, 17:10, 26:18,
     38:23, 41:7 .

ahead 7:1 .
akin 15:22 .
allocutes 31:12 .
allow 31:13, 38:14 .
almost 19:17, 26:3, 26:5,
    28:15 .
already 5:8, 11:18, 14:13, 25:17,
    36:2, 36:8, 39:20, 40:1 .
Although 33:22, 35:5,
    37:11 .
America 1:5, 2:14 .
ammunition 38:22 .
among 33:4, 35:20, 36:7 .
amount 14:14, 39:11 .
answer 25:4, 38:11 .
apologize 10:7 .
appeal 40:16, 40:17, 40:20 .
appear 9:9 .
appeared 3:12 .
appears 33:8 .
applicable 37:20 .
application 7:7, 7:12 .
apply 8:1, 8:3, 10:6 .
appreciate 5:7, 6:23, 10:16,
    10:18 .
approach 37:13 .
appropriate 7:9, 7:13, 10:5,
    12:12, 30:23, 36:19,
    39:23 .
approved 38:13 .
area 19:12, 35:19 .
areas 17:2 .
argued 21:4 .
argument 2:7, 7:1, 14:19, 16:17,
    26:25, 31:16, 32:18 .
arrest 33:18 .
arrested 6:18, 38:18 .
articulate 41:7 .
articulated 8:10 .
articulates 8:17 .
aspect 25:19 .
assessment 39:11, 39:20 .
Assistant 1:30, 2:15 .
assume 10:9, 22:13, 22:15,
    40:8 .
attached 3:23 .
attempt 23:22, 23:24,
    24:10 .
attended 33:14 .
Attorneys 1:30, 2:15, 4:18 .

Aubrey 10:10, 24:6 .
authorized 38:4, 38:9 .
available 33:6 .
avoid 33:4, 36:6 .
await 18:12 .
away 13:15, 28:1, 33:25 .
.
.
< B > .
baby 13:17 .
back 3:10, 13:21, 20:4, 23:1,
    25:12, 37:11, 41:11 .
background 18:10, 18:11,
    34:8 .
backup 23:5 .
bad 11:2 .
Baltimore 1:16, 1:39, 1:50,
    2:17, 34:18 .
baptisms 13:17 .
Base 10:23, 11:4, 11:7 .
based 8:4, 9:12, 15:24 .
basically 22:23 .
Batman 17:15 .
Baugh 2:19 .
bear 34:24 .
became 31:2 .
bedroom 15:17 .
behalf 2:16, 2:25, 5:25,
    20:1 .
behaved 24:19 .
behavior 22:17, 24:25 .
behind 2:11 .
belabor 7:5 .
belaboring 12:14 .
believe 8:19, 14:4, 36:24 .
believed 9:17 .
bench 31:18, 31:20 .
beside 3:1 .
besides 6:8 .
best 22:8 .
better 12:8, 30:8, 31:1,
    41:11 .
beyond 28:20 .
boils 23:21 .
BOP 36:2, 36:5 .
bore 17:19 .
born 33:7 .
bottom 29:5 .
Brady 4:11, 4:19, 27:9 .
breadth 14:16, 40:4 .

breaks 37:2 .
briefly 12:15, 31:12 .
brings 11:10, 11:12, 11:13 .
broader 20:15 .
broke 13:1 .
burden 7:25, 8:2 .
Bureau 39:22 .
burglaries 15:4, 16:4, 16:13,
    27:15, 34:18 .
burglarized 28:17 .
burglarizing 15:19, 16:23 .
burglary 12:20, 12:25, 16:18,
    16:20, 19:25, 34:17 .
.
.
< C > .
calculate 10:22 .
calculated 27:1 .
calculating 32:17 .
calculation 11:18 .
call 2:4, 8:21 .
called 10:10 .
Calling 2:13 .
calls 26:23 .
Cameron 1:38 .
capture 15:5 .
captured 15:20 .
capturing 15:8 .
car 27:16, 27:21 .
care 29:17, 33:10, 41:14 .
careful 18:4 .
Carl 1:39, 2:17 .
case 2:4, 2:14, 4:5, 4:8, 4:25,
    7:14, 7:20, 7:21, 8:14, 10:5,
    12:13, 12:22, 13:10, 14:20,
    15:5, 15:7, 16:2, 16:4, 19:19,
    22:4, 25:7, 25:22, 27:23,
    29:6, 37:11, 40:4, 40:5 .
cases 15:12, 15:20, 15:21,
    28:13 .
categories 7:15 .
Category 11:11, 11:13 .
caused 35:16, 35:19, 36:21 .
causing 36:1 .
cautious 3:11 .
CDF 23:16, 27:2, 30:15, 35:23,
    36:1 .
cell 17:18, 19:18 .
certain 4:17, 34:13 .
Certainly 4:7, 8:16, 9:10, 10:17,

17:21, 18:14, 29:9, 29:10,
30:6, 34:15, 36:8 .
**certificates** 29:18 .
**certify** 41:19 .
**cetera** 13:7 .
**chair** 15:17 .
**challenge** 10:1, 33:13 .
**chance** 28:9 .
**change** 3:5 .
**changed** 16:7 .
**character** 32:9 .
**characteristics** 33:3, 34:7 .
**characterized** 24:5 .
**charges** 4:16, 6:19, 9:3 .
**child** 15:17, 15:18 .
**childhood** 33:9 .
**children** 15:16 .
**choices** 41:11 .
**chosen** 23:18, 34:13 .
**Chris** 2:16 .
**Christopher** 1:29 .
**circumstance** 9:4, 9:5 .
**circumstances** 4:17, 7:8, 7:22,
8:1, 9:1, 12:17, 30:23, 33:2,
34:16 .
**circumstantial** 29:8 .
**cited** 7:21 .
**clarification** 6:17 .
**clarify** 20:20 .
**clear** 6:7, 7:20, 7:22, 10:8,
10:17, 14:20, 20:23, 26:16,
31:25 .
**clearly** 9:23, 26:22, 27:13,
34:21, 34:23, 35:9 .
**CLERK** 41:15 .
**client** 5:1, 6:9, 26:8, 26:17 .
**close** 8:2, 25:10, 28:23 .
**closer** 8:21, 12:5, 35:7 .
**closest** 31:9 .
**closing** 23:23 .
**co-conspirators** 15:6 .
**co-defendant** 22:16 .
**colleagues** 9:10 .
**collection** 38:1 .
**collectively** 35:13, 36:21 .
**Colleen** 2:19 .
**college** 33:15 .
**comes** 24:24 .
**coming** 3:10, 15:18, 18:18,
34:22 .

**commentary** 29:3 .
**comments** 15:22, 41:5 .
**commit** 37:16 .
**commitment** 40:23 .
**common** 21:20 .
**communicate** 38:17, 39:6 .
**community** 28:13, 28:25, 30:1,
35:17, 35:20, 36:20,
40:3 .
**complains** 33:11 .
**completely** 10:8, 24:23 .
**comply** 32:21, 36:25 .
**comported** 27:9 .
**computer** 1:42 .
**computerized** 33:16 .
**concede** 5:17 .
**conceded** 5:6 .
**concerning** 31:20 .
**concluded** 41:17 .
**conclusion** 3:13, 3:16,
24:15 .
**concurrent** 37:4, 37:8 .
**conditions** 37:9, 37:14,
39:5 .
**conduct** 26:5, 32:25 .
**conducted** 33:25 .
**conducting** 17:3 .
**confer** 6:9 .
**conference** 31:18, 31:20 .
**conferred** 6:10 .
**confess** 14:19 .
**confidential** 38:24 .
**confirm** 5:1 .
**Congress** 32:19 .
**connection** 16:1, 19:19 .
**consequences** 4:15, 4:17 .
**consider** 14:24, 18:20, 29:1,
31:7, 31:8, 32:18 .
**consideration** 30:1 .
**considered** 8:15, 13:25, 33:2,
36:15 .
**considering** 13:24, 35:1, 35:23,
36:6, 36:9 .
**considers** 14:15 .
**consistent** 5:7, 33:17 .
**conspiracy** 12:19, 12:24, 13:3,
16:11, 17:19, 17:21, 34:17,
35:9 .
**consultation** 23:14 .
**contact** 27:3, 27:4, 29:15 .

**contemplates** 8:14 .
**contest** 7:12 .
**contesting** 7:19 .
**continue** 3:9, 13:21 .
**continued** 16:23 .
**control** 4:13, 23:9, 35:25 .
**controlled** 37:17, 37:19 .
**convicted** 14:7, 29:13 .
**conviction** 40:16 .
**convictions** 33:20 .
**cooperate** 37:25 .
**cooperating.** 31:21 .
**Correct** 6:2, 11:8, 39:19,
41:20 .
**correctly** 8:10, 14:3 .
**counsel** 2:17, 6:3, 10:12 .
**counsel.** 6:10 .
**Count** 3:14, 11:15, 14:7, 37:2,
37:6, 39:12, 40:6, 40:7,
40:12 .
**Counts** 3:14, 10:23, 11:16,
30:20, 37:3, 37:7, 40:11 .
**County** 1:39, 2:17, 34:18 .
**couple** 12:15 .
**course** 7:16, 20:9, 23:18,
36:6 .
**Courtroom** 1:23, 2:9 .
**cousin** 18:25, 19:6, 19:11, 19:13,
19:14, 19:21, 20:7, 23:7,
23:11, 23:13, 23:14,
26:11 .
**cover** 35:12 .
**covered** 35:22 .
**COVID** 27:2, 27:5, 30:25,
35:24 .
**Covid-related** 3:3 .
**credit** 6:21, 7:24, 8:5, 8:12,
8:18, 8:20 .
**crime** 32:23, 33:1, 37:16,
40:2 .
**crimes** 15:13, 15:21, 15:25 .
**Criminal** 1:9, 2:15, 11:11,
11:12, 11:13, 17:12, 20:5,
23:3, 29:15, 32:25, 33:20,
38:18 .
**critical** 13:3, 19:2 .
**cross** 23:15 .
**cross-examination** 24:8 .
**CRR** 1:47, 41:19 .
**culpability** 35:3, 36:8 .

culpable 36:10, 36:11 .
custody 4:13 .
.
.
< D >.
dangerous 38:22 .
Dark 17:14 .
darn 31:2 .
date 6:19, 36:4, 40:21 .
Dated 41:24 .
day 6:20, 6:24, 18:17, 34:22,
    41:24 .
days 40:21 .
deadly 30:17 .
deal 23:4, 25:19 .
December 33:7 .
decide 40:22 .
decided 5:9, 10:2, 35:5 .
decision 9:6 .
decisions 18:5, 18:22 .
deemed 37:20 .
defend 9:24, 9:25 .
defendants 33:5, 36:7 .
defending 9:20 .
defense 3:22, 4:2, 4:12, 4:14,
    7:18, 9:25, 11:21, 20:14,
    21:3, 31:15, 31:16 .
delayed 36:1 .
delays 35:24 .
deliberation 16:25 .
Demar 26:13, 26:18, 26:19,
    27:13, 27:21 .
demeanor 32:9 .
demonstrate 34:14 .
deny 8:5 .
Department 2:18 .
departures 32:18 .
depending 9:13 .
described 33:20 .
desperation 16:16 .
destructive 38:22 .
detail 34:20 .
Detective 1:39, 2:17, 21:16,
    21:18 .
deter 32:25 .
determines 39:1, 39:23 .
device 38:22 .
dice 22:23 .
different 9:19, 18:2, 18:10,
    30:16, 34:13, 34:15 .

differentiating 16:12 .
difficult 31:1, 33:9, 36:3 .
diminish 28:7 .
diploma 33:15 .
directed 38:1 .
direction 34:15 .
directly 24:17, 39:7 .
disclose 4:11 .
discussed 5:2, 11:18, 40:1 .
discussion 17:24, 18:18,
    35:18 .
disingenuous 28:18 .
dismiss 40:7, 40:10 .
dismissal 4:16 .
dismissed 3:15, 40:12,
    40:14 .
disparities 33:4, 36:7 .
disputing 17:11 .
disrespecting 24:23 .
DISTRICT 1:1, 1:2, 38:3,
    38:9 .
DIVISION 1:3 .
Dix 31:8, 39:24 .
DNA 38:1 .
dog 27:18 .
doing 4:8, 11:3, 16:19, 18:2,
    19:4, 22:11, 22:13, 23:9,
    26:8 .
dollars 12:21 .
done 4:24, 4:25, 9:14, 32:2,
    32:12 .
doors 13:1 .
double 15:10 .
doubling 26:3, 26:6 .
doubt 26:18, 27:25, 29:3 .
down 3:10, 19:25, 23:21,
    32:5 .
drafting 23:20 .
driven 16:15 .
drivers 13:9 .
due 4:5 .
duress 23:18 .
During 2:6, 17:4, 19:22, 19:23,
    21:9, 23:14, 23:23, 24:7,
    24:8, 26:14, 27:15, 30:25,
    32:1, 34:21, 35:18, 41:4 .
dynamic 18:8 .
.
.
< E >.

eager 32:4 .
easier 9:7, 12:7 .
economic 15:13 .
effectively 26:5 .
effort 17:17 .
either 18:13, 21:1, 22:12, 25:21,
    38:10, 39:7, 39:18 .
electrical 29:18 .
elevated 3:11 .
elsewhere 38:15 .
email 19:20 .
embrace 17:13 .
employment 33:17 .
end 29:5, 29:20, 30:22 .
ended 14:2 .
enforcement 13:19, 21:15,
    21:22, 22:3, 38:19,
    38:23 .
engaged 38:18 .
enhancement 5:9, 5:10, 7:19,
    7:24, 8:4, 9:11, 10:5, 11:4,
    11:9, 20:25, 22:25 .
enjoying 24:22 .
enough 10:17 .
ensure 32:20 .
ensured 29:12 .
entered 13:2 .
enterprise 17:12 .
escape 30:7 .
especially 30:17 .
Esquire 1:28, 1:29, 1:35 .
establish 7:25 .
et 13:7 .
events 13:18 .
everyone 32:11, 34:19,
    35:25 .
everything 27:20, 28:4,
    32:11 .
evidence 4:16, 10:1, 20:10, 22:8,
    23:24, 29:8 .
exact 35:5 .
exactly 33:24, 35:22 .
example 15:16 .
exception 29:25 .
exceptional 7:8 .
exchange 19:24 .
exclusion 4:16 .
exculpate 23:7 .
exculpatory 4:14 .
excuse 20:13 .

exhibit 3:23 .
exhibits 3:21 .
expensive 13:9 .
experience 15:24, 16:8,
    22:14 .
expertise 20:7 .
explain 28:2 .
explanation 24:1 .
expressed 34:4 .
extent 36:13 .
extra 3:11, 6:20, 6:23 .
extraordinary 7:22, 7:25, 8:11,
    9:1 .
extreme 4:17 .
.
.
< F >.
face 7:24 .
facility 30:18, 31:9 .
facing 23:5 .
fact 5:25, 27:4 .
factor 13:25, 16:12, 16:13, 17:1,
    24:12 .
factors 12:16, 13:25, 14:22,
    25:1, 29:25, 32:19 .
facts 20:16, 20:17, 21:7, 24:15,
    34:24 .
factual 7:12, 31:14 .
fail 4:14 .
fair 29:2 .
fall 7:14 .
false 8:4 .
families 16:6, 16:7 .
family 13:18, 20:18, 21:6, 22:6,
    27:4, 33:20 .
fan 9:11 .
fanciful 9:23, 10:8, 24:5,
    34:11 .
far 30:25, 31:1, 36:3 .
far-reaching 12:19, 16:11 .
father 13:15 .
FBI 21:18, 21:23, 22:1 .
fear 20:6, 22:16, 26:24, 35:13,
    35:20 .
Federal 1:48, 37:16, 38:3,
    38:8 .
feel 10:17, 11:6, 22:12,
    31:14 .
feeling 15:15, 16:8, 35:14,
    35:16 .

felt 21:5 .
fictitious 10:10, 17:19,
    24:5 .
Fields 5:8, 8:23, 13:4, 14:1,
    19:22, 19:23, 19:24, 20:1,
    20:2, 20:5, 25:15, 26:14,
    34:25, 35:2, 35:6, 35:7, 36:9,
    36:10, 36:11, 37:23 .
fight 28:16 .
figure 30:10 .
figures 23:6 .
file 40:20 .
filed 3:20, 3:22, 22:25 .
financial 16:15 .
find 21:17, 29:19, 34:12,
    39:15 .
finding 3:16, 21:8 .
fine 13:7, 25:10, 31:17,
    39:15 .
firearm 38:22 .
first 6:14, 11:4, 16:19 .
first-time 25:22 .
fit 5:10, 8:16 .
fits 36:16 .
five 37:7, 37:8 .
Floor 1:49 .
focus 21:2 .
follow 21:17, 39:4, 39:10,
    39:14 .
following 31:22 .
forefront 17:7 .
foregoing 41:20 .
forever 16:7 .
forfeiture 39:17 .
forgetting 40:25 .
formally 9:2 .
Fort 31:8, 39:24 .
forth 20:4 .
foster 29:17, 33:10 .
found 3:14, 18:2, 34:8,
    34:11 .
four 10:23, 27:2, 27:3,
    30:15 .
frankly 9:21, 27:7, 27:8, 28:2,
    28:3, 35:25 .
fraud 15:12 .
friend 22:7 .
front 4:9, 13:1, 23:25,
    29:14 .
full 7:1, 30:16 .

full-time 38:16 .
fun 24:23 .
function 24:11, 24:18, 34:2 .
future 33:1, 41:4 .
.
.
< G >.
G. 1:47, 41:19, 41:31 .
game 20:2 .
gap 34:25, 35:1, 35:3 .
gauge 34:4 .
gave 6:2, 22:3, 40:18,
    40:19 .
generated 27:10 .
GEORGE 1:22 .
Georgia 12:20, 19:25,
    34:18 .
germane 12:16 .
gets 10:25, 11:2, 11:5,
    31:16 .
getting 14:2, 16:22, 38:24 .
gist 4:9 .
Give 6:13, 9:13, 29:4, 31:4,
    31:5, 32:14 .
given 8:24, 13:14, 13:17,
    26:17 .
giving 28:8 .
GJH-18-335 2:15 .
gotten 31:15, 36:4 .
graduated 33:14 .
great 31:2, 34:20 .
greater 17:8, 32:21, 36:25 .
green 6:3 .
Greenbelt 2:9, 9:10, 25:12 .
group 10:23, 33:10 .
guess 3:2, 3:10, 18:17 .
guideline 11:14, 12:12, 14:2,
    15:12, 29:3, 30:19, 40:1 .
guilt 3:16, 7:12, 28:2, 30:5 .
guilty 3:14, 9:2, 31:19 .
guy 18:7, 26:22, 27:13, 27:14,
    27:18 .
.
.
< H >.
half 27:5 .
handbags 13:7 .
handwriting 27:21 .
happened 14:8, 25:18 .
happens 23:25 .

happy 25:4 .
hard 3:8, 16:16, 28:21 .
harm 4:7, 16:3, 21:14,
    36:21 .
harmed 16:1 .
Hart 27:24 .
hatched 23:17 .
hatching 23:19 .
haul 16:22 .
HAZEL 1:22 .
health 39:13 .
hear 3:7, 6:25, 7:1, 12:2, 25:8,
    32:4, 32:6 .
heard 13:5, 13:6, 13:13, 13:17,
    21:12, 21:13, 21:19, 21:24,
    22:2, 22:6, 22:7, 25:17,
    32:3 .
HEARING 1:21, 2:7, 3:8, 3:16,
    32:18 .
heat 27:16 .
held 31:22 .
help 17:6, 23:7, 23:8,
    40:21 .
helping 26:22 .
hereby 41:19 .
herself 21:25 .
Hessen 15:16 .
high 33:14 .
History 11:11, 11:12, 11:13,
    23:3, 33:3, 34:7 .
home 15:19, 16:9, 16:20, 34:18,
    35:16, 38:15 .
homeless 29:21 .
homeowner 27:18 .
homes 12:20, 12:25, 13:1, 13:2,
    13:3, 15:16, 16:24,
    33:10 .
hone 13:22 .
Honorable 1:22, 41:15 .
hope 41:11 .
hours 38:4, 38:20 .
house 15:19, 28:16, 28:17 .
huge 19:16 .
hundreds 12:21 .
hurt 23:22 .
.
< I > .
idea 27:6 .
imagine 22:17, 28:22,

28:24 .
impact 3:21, 11:23, 15:4, 15:6,
    15:14, 15:19, 15:23, 16:3,
    16:5, 25:15, 28:7, 28:12,
    28:18, 29:25, 35:11 .
impacted 16:7 .
important 13:11, 13:18,
    15:4 .
impose 12:10, 25:5, 32:20,
    39:15 .
imposed 31:24, 39:20,
    39:25 .
impossible 28:15 .
impressed 34:9, 41:5 .
imprisonment 25:6, 38:5 .
in-kind 37:23 .
inadmissible 23:24 .
incarceration 30:25, 31:1, 37:2,
    39:24 .
incident 8:15 .
incidentally 27:14 .
include 31:20, 32:22 .
included 14:17, 33:10 .
including 17:18, 32:11 .
indicated 2:9, 29:21, 36:9,
    41:4 .
indicating 3:6 .
indication 18:11, 19:15 .
indictment 40:13 .
indictments 40:8, 40:13 .
individual 28:13, 28:20,
    35:14 .
individually 35:12, 36:21 .
individuals 9:15, 40:3 .
infer 29:9 .
informant 38:24 .
information 21:15, 21:24,
    21:25, 22:3, 22:5, 22:7 .
informed 21:12 .
informs 3:8 .
initial 38:5 .
instance 5:6 .
instances 5:19 .
instilled 35:13 .
instructed 38:8 .
instructions 38:6, 39:4 .
intellect 34:9 .
Intended 10:24 .
interact 38:17, 39:6 .
interview 21:9 .

introduced 19:17 .
investigation 29:8 .
involve 9:4 .
involved 4:18, 11:1, 11:6, 12:25,
    34:17, 34:24 .
involvement 32:8 .
involves 9:2 .
involving 12:19 .
issue 3:3, 5:16, 5:23, 7:10, 7:11,
    7:16, 8:10, 9:8, 20:15, 37:24,
    40:23 .
issues 6:8, 7:2, 11:17 .
items 13:2, 13:8, 13:9, 13:12,
    14:14 .
itself 17:19 .
.
.
< J > .
J. 1:22 .
Jamaica 33:8 .
Jersey 19:10 .
jewelry 13:7, 13:14, 13:17 .
John 1:35, 2:25 .
judgment 40:23 .
judicial 25:20, 38:9 .
jurisdictions 23:6 .
jury 9:17, 23:25, 24:11, 34:10,
    34:11 .
justice 7:4, 7:20, 9:6, 9:11, 10:4,
    11:9, 24:12, 24:18, 26:2,
    29:16 .
.
.
< K > .
Kamar 1:10, 2:14 .
keep 3:4, 3:7 .
kept 19:4 .
key 12:24, 13:9, 13:25 .
kid 29:17 .
kill 22:2 .
kind 29:7, 35:12 .
Kingston 33:7 .
Knight 17:14 .
knowing 23:25, 30:16 .
knowingly 38:8 .
known 10:2 .
.
.
< L > .
large 29:7 .

larger 10:9 .
last 2:6, 2:8 .
later 15:11 .
law 7:20, 7:21, 7:22, 13:19,
    21:15, 21:21, 22:3, 24:24,
    32:24, 38:19, 38:23 .
lawyer 25:17 .
lawyers 27:4 .
leader 23:4, 34:21, 34:23,
    35:9 .
learned 21:8 .
least 5:5, 15:23, 17:16, 27:5,
    33:8, 33:17, 36:2, 36:12,
    36:13, 36:14, 37:10,
    40:6 .
leave 38:8 .
left 27:24 .
legal 7:10, 7:11, 9:22, 34:8 .
length 24:7 .
lengthy 9:14, 35:23 .
less 10:25, 15:3, 36:11 .
level 3:11, 10:24, 11:4, 11:7,
    11:11, 11:13, 33:22,
    39:23 .
levels 10:25, 11:1, 11:5,
    11:10 .
lie 24:6, 24:7 .
lies 24:8 .
lieu 17:5 .
life 29:17, 30:10, 34:13,
    41:12 .
light 6:3 .
likely 30:9 .
lines 20:2, 24:16 .
literally 8:24 .
little 3:11, 19:6, 27:3, 27:4,
    36:3, 36:4 .
live 38:13 .
lives 16:7, 35:13 .
living 19:10, 28:24 .
local 37:16 .
Lombard 1:49 .
long 3:6, 5:22, 25:9, 25:11,
    31:4 .
long-lasting 16:3 .
look 18:5, 27:14, 30:9, 31:3,
    32:15 .
looking 5:17, 18:9, 27:1,
    28:22 .
looks 15:14 .

loss 10:24, 14:14, 16:8 .
lot 3:5, 9:18, 19:15, 24:21, 32:1,
    35:18 .
love 23:11, 23:13 .
loved 13:14 .
loving 33:21 .
low 24:1 .
lower 23:2 .
loyalty 26:10 .
ludicrous 27:7 .
lying 23:8 .
.
.
< M > .
M. 1:35 .
Macdonald 13:16 .
madam 3:6 .
man 18:21 .
managed 29:18 .
manner 16:24 .
manual 5:17 .
maps 28:23 .
Marshall 21:20, 21:24 .
Maryland 1:2, 1:16, 1:50, 4:11,
    12:20 .
mask 3:4, 3:7 .
mastermind 26:9 .
material 4:12 .
math 11:2 .
matter 2:12, 41:22 .
maximum 11:14, 11:15,
    14:6 .
MCKENNA 1:35, 2:24, 2:25,
    4:2, 5:1, 5:3, 5:15, 6:2, 6:11,
    6:22, 6:25, 8:7, 8:8, 9:8,
    11:21, 17:25, 18:15, 25:8,
    25:11, 28:11, 28:15, 29:2,
    40:21, 41:2 .
mean 19:2, 20:21, 20:22 .
means 5:9 .
mechanical 1:41 .
meet 19:12 .
member 12:23, 13:3, 21:6,
    22:7 .
members 20:18, 33:20 .
memorandum 3:20, 3:22 .
memorandums 25:14 .
memory 4:10 .
mental 39:13 .
mentioned 3:25 .

merits 8:19 .
message 19:19, 19:25 .
messages 19:16, 19:17 .
met 8:2 .
mic 12:5, 12:8 .
microphone 25:10, 32:5 .
million 10:25 .
mind 3:6, 10:18, 14:15, 14:19,
    14:21, 27:13, 34:20 .
minor 6:16 .
misguided 26:10 .
missing 11:8 .
mistaken 26:10 .
Mitchell 1:47, 41:19, 41:31 .
mom 21:25, 22:1 .
moment 16:10, 32:14 .
monetary 13:8, 13:11, 15:1,
    15:3 .
money 19:5, 27:22, 27:23 .
months 11:14, 11:15, 12:11,
    14:5, 14:6, 19:9, 25:6, 25:24,
    26:3, 30:19, 30:22, 31:7,
    37:2, 37:3, 37:5 .
mood 9:13 .
mother 13:15, 21:10, 21:11,
    21:14, 21:18, 21:19, 21:21,
    28:17 .
motion 40:10 .
motivation 18:3, 19:3, 22:16,
    22:17, 30:9 .
motivations 18:24 .
move 12:5 .
MR. RILEY 12:4 .
Ms. 13:16, 15:16, 21:11, 21:13,
    21:20, 21:24, 27:24 .
mucking 9:21 .
Multiple 17:18, 19:9, 19:11 .
mushy 22:8 .
myself 18:3, 34:12 .
.
.
< N > .
name 17:19 .
nature 12:17, 16:11, 33:2,
    34:16, 36:19, 40:2 .
near 31:2 .
necessarily 8:14, 23:18,
    28:21 .
necessary 32:21, 36:25 .
need 5:14, 24:24, 32:22, 33:4,

34:19, 36:6, 40:19,
40:20 .
**needs** 40:7 .
**New** 19:10 .
**next** 15:2 .
**nine** 19:18 .
**No.** 1:9, 2:15 .
**none** 20:10, 28:1 .
**nonetheless** 33:14 .
**nor** 7:18 .
**normal** 25:22 .
**NORTHERN** 1:3 .
**note** 2:18, 5:24, 7:7, 7:12, 33:12,
33:19, 34:6, 34:20 .
**notebook** 27:21 .
**noted** 34:20 .
**notes** 6:18, 27:20, 32:15 .
**notice** 40:20 .
**notified** 12:1 .
**notify** 38:19, 39:2 .
**number** 3:21, 4:15, 9:19, 14:12,
14:16, 15:9, 19:17 .
**numbers** 3:9 .
.
.
**< O >.**
**O'connor** 2:19 .
**O.** 1:10 .
**oath** 23:8 .
**objected** 5:12 .
**objection** 11:17 .
**objections** 5:5, 5:13, 6:8, 6:14,
6:15, 6:16 .
**obligation** 4:11 .
**obligations** 4:20, 4:22, 4:23,
27:9 .
**obstructed** 26:1 .
**obstruction** 5:19, 5:20, 7:3,
7:17, 7:19, 7:24, 8:4, 9:6,
9:11, 10:4, 11:9, 22:25,
25:19, 25:23, 26:2, 30:6,
30:20 .
**obvious** 26:9 .
**Obviously** 9:8, 11:22, 13:7,
13:21, 14:15, 18:2, 18:9,
18:10, 18:11, 18:17, 19:15,
31:25 .
**occasion** 17:16, 19:11 .
**occasions** 9:20 .
**occurred** 16:13, 29:16 .

**oddness** 28:2 .
**offender** 25:22 .
**offense** 10:23, 11:4, 11:7, 11:10,
11:11, 11:13, 12:18, 32:24,
33:3, 34:17, 35:10 .
**offenses** 16:1 .
**officer** 21:9, 38:2, 38:7, 38:14,
39:5 .
**Official** 1:48, 41:32 .
**often** 9:9, 9:12, 14:20 .
**Okay** 2:13, 10:15, 31:10,
37:25 .
**old** 22:12, 29:14, 29:16 .
**Once** 16:19, 19:8, 37:15 .
**One** 6:16, 12:24, 13:1, 13:2,
13:9, 13:14, 13:22, 14:7,
14:15, 16:8, 17:16, 18:5,
19:3, 20:18, 24:16, 25:1,
34:10, 35:16, 37:11, 39:16,
40:6 .
**one-off** 16:15 .
**onerous** 30:25 .
**onset** 25:17, 26:4 .
**open** 14:19, 14:21, 31:22,
40:10 .
**opened** 14:25 .
**opening** 8:24, 23:23, 26:21,
30:12 .
**opportunity** 6:14, 19:13, 24:22,
41:10 .
**opposed** 29:5 .
**order** 4:5, 40:23 .
**ordered** 3:17 .
**organizer** 17:12, 17:21 .
**otherwise** 31:5, 39:6 .
**ought** 31:3 .
**outcome** 32:13 .
**outside** 9:1 .
**own** 6:15, 9:20, 18:21, 30:5,
35:16, 38:21 .
.
.
**< P >.**
**p.m.** 2:2, 41:17 .
**page** 6:17 .
**Paige** 1:38 .
**pandemic** 23:1 .
**paraphrasing** 20:3 .
**part** 12:19, 17:22 .
**participate** 39:9, 39:13 .

**particularly** 13:23 .
**passed** 13:15 .
**path** 34:13 .
**Patricia** 1:47, 41:19, 41:31 .
**Paul** 1:28, 2:15 .
**Pause.** 32:16 .
**pay** 39:11 .
**people** 15:25, 16:1, 29:22,
32:10 .
**per** 39:12 .
**percent** 6:22 .
**perfect** 29:17 .
**perhaps** 20:5, 23:20 .
**period** 16:14, 19:9, 28:24 .
**perjure** 10:3 .
**perjured** 10:14, 21:4 .
**perjurious** 9:23, 22:22 .
**perjury** 8:5 .
**permission** 38:10, 38:25,
39:8 .
**persistent** 24:9 .
**person** 10:10, 15:25, 17:19,
21:23, 24:6, 26:16, 30:15,
39:2 .
**personally** 12:25, 35:21 .
**persons** 15:21 .
**perspective** 16:12, 17:2, 21:7,
24:20, 26:12 .
**phone** 17:18, 26:23 .
**phones** 17:18, 19:18 .
**physically** 16:1 .
**place** 28:24, 32:13, 35:19,
36:17, 38:13, 40:5 .
**placed** 37:15, 39:24 .
**Plaintiff** 1:7, 1:26 .
**plan** 23:17, 23:18, 23:19, 26:20,
27:6 .
**planning** 27:20 .
**played** 18:7 .
**players** 12:24 .
**playing** 28:14 .
**plea** 31:19 .
**pleading** 9:2 .
**Please** 22:21 .
**plexiglass** 2:10, 2:11 .
**plumbing** 29:18 .
**plus** 11:5 .
**pod** 23:16 .
**podium** 12:7 .
**point** 6:1, 7:2, 10:22, 13:21,

15:2, 15:11, 19:1, 22:9,
22:15, 22:19, 30:24 .
**points** 7:6, 12:14 .
**Police** 1:39, 2:18 .
**policy** 31:19 .
**polite** 33:21 .
**portion** 2:6 .
**pose** 39:1 .
**position** 5:18, 5:21, 12:8 .
**possess** 37:17, 38:21 .
**possession** 4:13 .
**possibility** 3:5 .
**possible** 4:12, 18:24, 18:25,
29:25 .
**potential** 19:24 .
**potentially** 4:13, 20:15,
21:6 .
**premeditation** 16:25 .
**preparation** 3:17 .
**preparing** 14:13 .
**Present** 1:38, 2:19, 11:25,
34:10 .
**presented** 20:11 .
**presentencing** 3:17, 3:19, 5:2,
6:15, 33:9, 33:12 .
**press** 5:23 .
**pretrial** 40:17 .
**pretty** 14:20, 26:16 .
**primarily** 3:21 .
**prior** 33:17, 33:19, 40:8,
40:13 .
**Prisons** 39:23 .
**pro** 23:10, 23:22 .
**probably** 5:22, 40:24 .
**Probation** 1:38, 21:9, 21:12,
21:15, 38:1, 38:3, 38:7,
38:10, 38:12, 38:13, 38:14,
38:19, 39:1, 39:2, 39:4,
39:8 .
**proceed** 6:12, 23:22 .
**proceeding** 3:13, 23:9,
31:20 .
**Proceedings** 1:20, 1:41, 41:17,
41:21 .
**proceeds** 7:9 .
**process** 4:5, 14:18, 24:23 .
**produced** 1:42 .
**productive** 41:10 .
**professional** 4:17 .
**progeny** 4:11 .

**program** 39:9, 39:10,
39:14 .
**promote** 24:24, 32:23, 33:1 .
**proper** 6:19 .
**property** 5:11, 12:21, 13:6,
13:18, 15:2, 15:13, 16:21,
32:10 .
**protect** 32:25 .
**provide** 24:25, 32:24 .
**provided** 20:13, 20:14, 21:15,
39:22 .
**PSR** 36:14 .
**Psrs** 25:14 .
**psychological** 16:2, 16:3, 28:6,
28:12 .
**public** 32:25 .
**pull** 18:5, 32:5 .
**punished** 9:15, 26:5, 29:24 .
**punishment** 24:25, 30:7,
32:24 .
**purported** 21:9 .
**purpose** 9:20, 9:21, 9:24 .
**purposes** 32:21, 32:22,
37:1 .
**pushing** 10:18 .
**put** 19:15, 23:23, 23:24 .
**puts** 35:12 .
**putting** 18:4, 32:11 .
.
.
**< Q >.**
**quad** 23:16 .
**question** 7:17, 12:18, 13:20,
22:9 .
**questioned** 38:19 .
**questions** 25:3, 38:11 .
**quickly** 4:3 .
**quite** 12:18 .
**quote/unquote** 26:9 .
.
.
**< R >.**
**radios** 17:3 .
**raised** 5:15 .
**range** 11:14, 12:12, 30:19,
36:15 .
**ranges** 29:4 .
**rank** 35:4, 35:6 .
**rare** 8:12, 15:20 .
**rather** 36:1 .

**ravaged** 27:2 .
**ravaging** 30:18 .
**read** 5:2 .
**reading** 18:14, 33:9 .
**ready** 6:11 .
**really** 13:22, 32:9, 34:4, 40:3,
41:4 .
**realm** 20:7 .
**reason** 2:8, 23:12, 28:19, 29:4,
30:11, 30:12, 30:13,
31:4 .
**reasoning** 40:1 .
**reasons** 8:17, 10:2, 24:16, 35:24,
40:24 .
**rebut** 31:15 .
**recall** 3:14, 17:7, 17:13,
23:14 .
**receive** 8:18, 38:6 .
**received** 3:19, 3:24, 20:25 .
**receives** 8:12 .
**receiving** 5:11 .
**recognition** 20:7 .
**recognize** 37:12 .
**recollection** 17:6 .
**recommendation** 12:3,
25:4 .
**recommends** 39:22 .
**record** 2:25, 3:15, 4:24, 5:25,
6:7, 10:17, 29:15, 31:14,
41:21 .
**recorded** 1:41 .
**records** 36:8 .
**recovered** 13:19 .
**refer** 15:9 .
**reference** 17:13 .
**referenced** 10:8, 15:8 .
**referred** 17:14, 17:16, 26:23,
33:23, 33:24 .
**referring** 10:9, 10:11 .
**reflect** 32:23, 35:5, 35:8 .
**reflected** 16:25 .
**refrain** 37:18 .
**refresh** 17:6 .
**regard** 28:10, 33:2 .
**Regarding** 12:3, 34:16, 35:10,
37:6 .
**regulations** 39:10, 39:14 .
**rehabilitation** 33:1 .
**related** 6:18, 7:3, 24:17,
39:5 .

relationship 18:8 .
relatively 15:20, 28:23,
    34:7 .
release 6:17, 25:6, 37:6, 37:9,
    37:14, 37:15, 38:5 .
released 30:17 .
relevant 20:21, 32:19, 34:6 .
relished 24:21 .
reluctance 20:1, 20:4 .
remember 14:2, 22:25 .
remembering 17:9 .
remorse 33:22, 34:1, 34:4,
    34:5 .
repeated 24:7, 24:9 .
repeatedly 13:13, 16:5, 21:5,
    36:1 .
report 3:17, 3:19, 5:2, 6:15,
    33:9, 33:12, 38:3, 38:5, 38:6,
    38:7 .
Reporter 1:48, 3:6, 12:5,
    41:32 .
request 31:6, 37:21, 37:22,
    39:16, 39:17 .
require 9:3, 39:2 .
required 31:25, 32:1, 32:2 .
researching 17:2 .
reside 38:4, 38:9 .
resolve 5:14 .
resolved 5:13 .
respect 7:7, 7:17, 7:19, 12:17,
    19:23, 20:5, 24:24, 26:22,
    32:23 .
respectful 33:21, 34:8,
    41:6 .
respectfully 31:6 .
respects 15:13, 24:21 .
respond 6:14, 7:2, 28:9 .
responded 20:2 .
responsibility 5:16, 7:3, 7:23,
    8:6, 8:10, 8:13, 8:19, 8:20,
    8:25, 9:2, 25:23, 30:4 .
responsible 35:24 .
restitution 37:20, 37:21, 37:23,
    39:17 .
reverence 25:20 .
review 11:23, 36:13 .
reviewed 3:19 .
reviewing 19:16 .
ride 25:11 .
Rigali 1:29, 2:16, 9:9 .

Right. 26:23 .
ring 23:4, 34:21, 34:23,
    35:9 .
rise 3:9, 41:15 .
risk 27:18, 39:1, 39:3 .
RMR 1:47, 41:19 .
robberies 20:22, 20:24,
    28:14 .
robbery 15:21, 15:24 .
Robin 17:15 .
role 17:8, 17:24, 22:23 .
roles 18:2, 27:15 .
rules 39:10, 39:14 .
ruling 5:8 .
rulings 10:21, 40:17 .
run 37:3, 37:4 .
running 26:16, 27:14,
    27:16 .
.
.
< S >.
safe 15:15, 16:8, 35:15 .
sane 30:15 .
sat 25:13, 27:2, 34:19 .
saw 19:25, 26:15, 28:3,
    29:10 .
saying 23:12 .
says 8:11, 28:4 .
scared 18:6, 18:25, 19:6, 19:14,
    20:3, 21:6 .
scheduled 3:18 .
school 33:14 .
scope 14:16, 36:20, 40:4 .
score 11:12 .
scowling 26:13, 26:14 .
se 23:10, 23:22 .
Sealed 31:18 .
seated 2:3, 2:6, 2:7, 2:10,
    2:25 .
second 40:7 .
section 6:18 .
secure 15:15, 16:8, 35:15 .
security 39:23 .
seeking 5:8, 34:3, 36:23 .
seem 5:12, 33:11, 33:13,
    33:16 .
seemed 24:21, 34:2 .
seems 5:5 .
seen 19:14, 19:15, 20:8,
    20:10 .

sees 14:22 .
seized 19:18 .
selling 5:11 .
send 21:14 .
sends 27:16 .
sense 14:20, 36:13, 36:14 .
sent 27:11 .
sentence 12:10, 12:11, 12:12,
    13:24, 14:2, 24:17, 25:1,
    25:5, 29:4, 30:23, 31:4, 31:7,
    31:24, 32:20, 32:22, 32:25,
    35:4, 35:6, 36:9, 36:24, 37:1,
    37:4, 39:25, 40:1, 40:18 .
sentences 33:5, 35:8, 37:4 .
SENTENCING 1:21, 2:21, 3:5,
    3:18, 3:20, 3:22, 6:3, 7:6,
    7:21, 12:1, 12:3, 12:11,
    12:13, 13:10, 14:21, 19:22,
    22:24, 23:5, 25:15, 31:20,
    32:22, 33:4, 35:1, 35:22,
    36:7, 37:23, 41:4 .
sentimental 13:12, 15:1,
    15:3 .
serious 12:19, 24:12 .
seriousness 32:23, 35:10 .
serve 36:5 .
served 6:21, 31:8, 36:2,
    36:4 .
services 39:9 .
set 15:10, 32:19, 37:1 .
sets 7:8 .
several 25:13, 31:3 .
sheer 14:16 .
shot 5:22 .
shouldn't 18:20 .
show 26:16, 27:14 .
showed 41:8 .
shown 33:22 .
sidekick 17:15 .
sightly 39:25 .
significant 13:8, 16:13, 23:3,
    23:5, 24:7, 35:20, 36:22 .
significantly 35:2, 36:11 .
similar 36:8 .
similarly 33:5 .
simply 5:10 .
single 16:18, 19:19, 19:20 .
sir 6:5, 32:7, 32:14, 40:15,
    41:12 .
sister 21:19, 21:20 .

sit 25:9, 27:6, 30:15, 32:4 .
sitting 27:3, 27:15, 28:22 .
situated 33:5 .
situation 16:15, 23:9, 30:8 .
six 10:24, 11:4 .
skills 41:9 .
sleeping 15:17 .
slew 19:16 .
slight 36:18 .
slightly 36:10 .
small 7:14, 24:6 .
smaller 35:2 .
sofas 29:22 .
somebody 29:14 .
Somehow 8:21, 40:19 .
someone 8:12, 8:17, 9:12, 15:18,
    21:14, 33:11, 34:7, 38:17,
    39:7, 41:9 .
sometimes 9:13 .
somewhat 34:9 .
somewhere 11:7 .
soon 4:12 .
sooner 36:4 .
sophisticated 5:9, 16:24,
    17:20 .
sorry 11:2, 19:23, 32:8, 32:10,
    32:12 .
sort 3:3, 7:8, 8:17, 9:21, 15:10,
    16:5, 16:14, 18:4, 20:14,
    23:24, 24:5, 24:10, 25:18,
    27:1, 29:11, 29:25,
    36:15 .
sought 25:1 .
source 21:23, 22:5, 38:24 .
speaking 3:4, 5:25, 19:3,
    34:7 .
Special 2:18, 39:11, 39:20 .
specific 8:15, 21:7 .
specifically 40:2 .
spectator 26:12 .
speech 9:14 .
spend 8:22, 8:23, 12:14 .
spending 23:16 .
spent 29:17, 29:21 .
spoke 21:14, 21:18, 21:21,
    21:23, 22:1, 31:25 .
squishy 29:7 .
stand 8:24, 9:12, 9:16, 10:2,
    25:12, 26:20, 30:14 .
standing 34:3 .

stands 41:16 .
start 18:15 .
started 18:6, 18:9 .
state 6:19, 19:10, 37:16 .
statement 8:25, 23:23, 26:21,
    30:12, 40:24 .
statements 3:21, 10:12, 10:13,
    11:23, 15:14, 15:23, 16:6,
    35:11, 35:15 .
States 1:1, 1:5, 2:14 .
status 6:17 .
statutory 14:6 .
stay 2:10, 35:23, 36:1 .
stenographic 41:21 .
stenography 1:41 .
stole 13:2 .
stolen 5:11, 13:6, 13:9 .
stood 30:12 .
story 9:23, 9:24, 10:8, 10:9,
    24:5, 24:22 .
strategy 29:11, 33:23 .
Street 1:49 .
submission 7:6, 7:21, 12:13,
    12:15, 17:25, 18:15,
    30:21 .
submit 8:8 .
submitted 16:6 .
subset 7:15 .
substance 37:18, 37:19 .
substantial 16:22, 16:25 .
substitute 29:19 .
subversion 24:18 .
subvert 24:11 .
sufficient 32:20, 36:25 .
suggest 20:17, 28:18, 29:24 .
suggesting 15:25, 17:8 .
Summer 2:18 .
superseding 40:7 .
supervised 25:6, 37:6,
    37:15 .
supervision 39:5 .
support 24:15 .
suppose 27:22, 27:23 .
surprise 18:1 .
surveillance 17:3, 27:17 .
system 24:19, 25:20, 29:16 .
  .
  .
< T >.
table 2:17 .

talked 13:16, 14:13, 15:16,
    16:10, 22:3, 23:15,
    35:11 .
talks 7:12 .
teacher 29:19 .
team 17:17 .
Ten 11:1, 15:9, 19:17 .
tend 5:10 .
Tennet 21:11, 21:13 .
term 9:22 .
terms 28:8, 33:17, 35:3, 36:16,
    39:23 .
terrified 28:25 .
terrorized 36:20, 40:3 .
testified 30:4 .
testify 9:25, 23:22, 23:23, 30:13,
    30:14 .
testifying 9:12 .
testimony 5:20, 8:5, 9:16, 10:12,
    13:5, 22:23, 24:3, 24:4, 24:8,
    28:21 .
text 19:16, 19:17, 19:19,
    19:25 .
theft 12:21 .
theme 16:5 .
theory 34:10 .
thinking 4:4, 8:22, 8:23, 14:13,
    25:16, 28:9, 30:3 .
though 25:21 .
thoughts 18:4, 18:5, 41:7,
    41:8 .
thousands 12:21 .
threat 21:9 .
threatened 20:17, 20:18, 21:5,
    21:13, 21:20, 22:2 .
three 25:6, 37:6 .
threshold 15:10 .
throughout 34:18 .
time. 27:1 .
today 2:20, 3:11, 3:18, 11:24,
    11:25, 18:12, 18:14, 32:2,
    32:3, 34:22, 40:21,
    40:25 .
together 10:23, 23:17, 23:19,
    23:20, 35:7, 35:12 .
tomorrow 40:24 .
took 29:12, 33:12, 35:19,
    40:5 .
top 29:5, 30:22 .
total 37:1, 37:4, 37:8 .

touched 35:21 .
towards 29:4, 30:22, 32:10 .
TRANSCRIPT 1:20, 1:41,
    41:20 .
treatment 39:13 .
tried 19:20 .
trips 19:10, 19:11 .
True 6:1, 34:1 .
truly 32:8, 32:10 .
truth 17:11, 21:17, 34:3 .
truth-seeking 24:11, 24:18,
    34:2 .
truthfully 38:11 .
try 3:3, 13:22, 23:7, 23:8 .
trying 9:24, 14:18, 19:5,
    22:12 .
turn 31:16 .
turnout 32:8 .
twice 19:9 .
two 5:5, 5:19, 11:1, 11:5, 11:10,
    15:17, 19:9, 20:21, 27:5 .
two-level 20:25 .
two-month 16:14 .
two-way 17:3 .
type 15:23 .
types 13:6, 33:5 .
.
.
< U > .
U.S. 1:30, 2:15 .
ultimately 18:5, 34:11, 35:4,
    36:24 .
unbearable 31:3 .
uncomfortable 3:4 .
understand 4:19, 5:4, 5:17,
    5:21, 7:18, 14:22, 26:7, 26:8,
    33:15, 40:16, 40:19 .
understands 4:22 .
understood 2:13 .
unemployed 29:20 .
unfortunate 34:15 .
unique 26:12 .
United 1:1, 1:5, 2:14 .
unlawful 37:18, 40:19 .
unlawfully 37:17 .
until 27:11 .
untruthful 34:12 .
unusual 9:4, 22:14 .
unwarranted 33:4, 36:7 .
upward 36:18, 36:22 .

USC 32:19, 37:1 .
.
< V > .
v. 4:11 .
valuables 27:23 .
value 13:8, 13:11, 13:12, 14:14,
    15:1, 15:3 .
variance 36:18, 36:22 .
variant 12:11, 24:17, 25:1 .
verbiage 26:19 .
versus 2:14 .
Victim 3:21, 11:23, 15:14,
    15:19, 15:23, 16:5, 25:15,
    35:11, 35:14, 39:7 .
victims 11:1, 11:6, 11:24, 11:25,
    12:1, 12:22, 13:13, 14:16,
    15:5, 15:7, 15:9, 15:10,
    15:15, 15:22, 16:4,
    32:11 .
videos 27:17 .
view 34:24, 36:12 .
viewing 24:2 .
views 24:10 .
virus 30:18 .
vis-a-vis 24:2 .
visit 38:14 .
vocational 39:9 .
vs 1:8 .
.
.
< W > .
W. 1:49 .
wager 22:24, 23:21 .
Walder 1:39, 2:17, 21:16,
    21:18 .
wanted 2:7, 5:7, 6:6 .
warrants 25:1 .
watch 26:13 .
watches 13:7 .
ways 33:25, 37:12, 41:5 .
weapon 27:19, 38:22 .
weeks 25:14 .
weight 16:17 .
whether 26:10, 31:21 .
whole 32:8, 32:9, 32:13 .
will 25:17, 25:21, 26:25, 29:11,
    34:20, 35:4, 35:8, 37:9, 38:5,
    40:21, 40:23 .
wish 11:24, 32:3, 41:3,

41:12 .
within 7:14, 8:16, 38:4, 38:20,
    40:21 .
without 19:11, 38:9, 38:24,
    39:7 .
witness 30:14 .
wonder 18:6, 18:7, 18:19,
    28:25 .
wondered 22:15 .
wondering 18:3, 18:6, 18:16,
    34:12 .
word 20:6 .
work 19:15, 29:18, 38:16,
    38:23 .
worked 15:21, 29:19 .
working 19:6, 23:19 .
works 9:22 .
worth 12:21, 16:20 .
writing 9:14 .
written 30:11 .
.
.
< Y > .
Yazaji 13:16, 16:20 .
years 15:18, 23:1, 25:6, 25:18,
    27:2, 27:3, 27:5, 29:14,
    29:16, 30:15, 31:3, 37:7,
    37:8 .